RECEIVED
Civil Clerk's Office
MAR 2 1 2012
Superior Court of the
District of Columbia
Washington, D.C.

## SUPERIOR COURT OF THE DISTIRCT OF COLUMBIA

### CIVIL DIVISION

Lisa Koker,
4754 6th Place, NE
Washington, DC 20017

             Plaintiff,

        v.

Aurora Loan Servicing, LLC,
10350 Park Meadows Dr.
Littleton, CO 80124

AND

Mortgage Electronic Registration Systems, Inc.
1818 Library Street, Suite 300
Reston, VA 20190

AND

James E. Clarke,
1602 Village Market Boulevard SE, Suite 310
Leesburg, VA 20175

Atlantic Law Group, LLC
1602 Village Market Boulevard SE, Suite 310
Leesburg, VA 20175

             Defendants.

Civil Case No.      **0002644-12**

Action Involving Real Property

**JURY TRIAL DEMANDED**

### (ACTION INVOLVING REAL PROPERTY)

### 4754 6th Place, NE, Washington, DC 20017

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, DECLARATORY AND OTHER EQUITABLE RELIEF AND CIVIL PENALTIES

Plaintiff, by and through their attorney, Craig A. Butler, Esq. and The Butler Law Group,

PLLC, assert this as her complaint against Defendants Aurora Loan Services, LLC, Mortgage

1



EXHIBIT

A

Electronic Registration Services, Inc., James E. Clarke, Esq. and Atlantic Law Group, LLC, and
pleads as follows:

## JURISDICTION

1.      This Court has jurisdiction under sections 11-921, *et seq.* and 28-3905 of the D.C.
Code.

## PARTIES

2.      Plaintiff Lisa Koker ("Owner" or "Plaintiff") was the former owner of 4754 6th
Place, NE, Washington, DC  20017 ("Property").  Plaintiff is a resident of the District of
Columbia.

3.      Defendant Aurora Loan Services, LLC ("Aurora") is the purported noteholder for
the Property.

4.      Mortgage Electronic Registration Services, Inc. ("MERS") was purportedly a
corporation acting as the nominee of American Brokers Conduit and then subsequently Aurora.
MERS was purportedly the beneficiary of the Deed of Trust described below in paragraph 8.

5.      Defendant James E. Clarke (hereinafter referred to a "Trustee"), purportedly
served as the Substitute Trustee by Deed of Appointment of Substitute Trustee recorded on
August 30, 2010.

6.      Atlantic Law Group, LLC ("ALG") was the professional limited liability
corporation representing the mortgagee.  Upon information and belief, it is believed that
Defendant James E. Clarke is a member of ALG.

2

## FACTS APPLICABLE TO ALL COUNTS

7.      Plaintiff purchased the property and a deed was recorded among the land records of the District of Columbia on November 9, 2006 as Instrument Number 2006152512.

8.      Plaintiff refinanced the Property on March 26, 2007 and the Deed of Trust ("Deed of Trust") was recorded among the Land Records of the District of Columbia on April 4, 2007 as Instrument Number 2007046303.  The lender referenced in the Deed of Trust was American Brokers Conduit.  See Exhibit 1.

### COUNT I
### (Violation of D.C. Code § 28-3904 – Against Defendant Aurora)

9.      The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 8 of their Complaint and further alleges as follows:

10.     This case arises, *inter alia*, from Aurora's predatory loan modification practices. In the wake of the recent economic downturn, the Plaintiff, facing financial distress, turned to Aurora for a loan modification that would allow for a more affordable monthly payment and permit the Plaintiff to keep her home.

11.     Aurora is a participant in the federal government's Home Affordable Modification Program, also known as HAMP, which was set up to help the millions of struggling homeowners at risk of foreclosure by working with lenders to lower their monthly mortgage payments.  Aurora claims to provide loan modifications to borrowers eligible for HAMP modifications.  Aurora also claims to provide non-traditional in-house loan modifications to borrowers not qualifying for HAMP modifications.

12.     In reality, Aurora has instituted a loan workout program that is designed to exploit borrowers who are in financial distress.  The scheme paves the way for Aurora to charge and

collect junk fees and monthly workout payments from borrowers (including the Plaintiff) only to subsequently foreclose on properties without complying with consumer protection statutes and procedural statutes governing foreclosures.

13.    Aurora's modification program is unlawful, unfair, and predatory in several respects.  Among other things, Aurora has unilaterally imposed loan forbearance or so called "workout agreements" that are designed to fail and which almost never convert to actual loan modifications.  Next, Aurora has failed to suspend foreclosure proceedings against certain borrowers who should have been considered for HAMP loan modifications, other in-house loan modifications or other alternative foreclosure prevention options.  Finally, Aurora has initiated loan foreclosures without complying with procedural statutes governing foreclosures.

14.    Aurora's unfair and unlawful conduct has resulted in great economic harm to the Plaintiff.  Plaintiff is entitled to relief, including injunction against Defendant's unlawful practices, compensatory damages, and punitive damages to deter future misconduct.

15.    In or around June 2008, Plaintiff commenced communication with Aurora regarding a loan modification due to the financial hardship that she was encountering due to the circumstances surrounding her divorce.  Aurora offered Plaintiff a Special Forbearance Agreement dated June 17, 2008 that required an initial payment of $1622.00, two additional payments of $1624.00 and then a final installment of $14,933.45.  Additionally, the June 17, 2008 Special Forbearance Agreement itemized the arrearage amount to include, *inter alia*, $216.00 in late charges, $2842.50 in legal fees and $119.00 in corporate advances.  See Attached as Exhibit 2.

16.    Plaintiff made the initial payment of $1622.00 and made the two additional payments of $1624.00 as agreed and then Aurora offered a second Special Forbearance

Agreement dated November 8, 2008.  The November 8, 2008 Special Forbearance Agreement requested an initial payment of $1709.00, two subsequent payments of $1709.00 and the final installment payment of $18,240.74.  Additionally, the November 8, 2008 Special Forbearance Agreement itemized the arrearage amount to include, *inter alia*, $216.33 in late charges.  See Attached as Exhibit 3.

17.     Subsequent to the November 8, 2008 Forbearance Agreement, Aurora offered the Plaintiff a third Forbearance Agreement on February 6, 2009 requiring an initial payment of $3244.00, two subsequent payments of $1731.00 and a final installment of $23,597.00. Additionally, the February 6, 2009 Special Forbearance Agreement itemized the arrearage amount to include, *inter alia*, $216.33 in late charges, $2925.00 in legal fees and $107.00 in corporate advances.  See Exhibit 4.

18.     Despite making the agreed upon initial installment payments and two subsequent payments pursuant to the February 6, 2009 Special Forbearance Agreement, Aurora initiated Foreclosure proceedings on February 13, 2009, after Aurora had received the initial installment payment.  See Exhibit 5.

19.     On August 17, 2009, Plaintiff filed a Chapter 13 Bankruptcy case in the United States Bankruptcy Case for the District of Columbia in an attempt to prevent foreclosure and save her home.  In Plaintiff's bankruptcy case, a Chapter 13 plan was confirmed on November 11, 2009 and a Consent Order Modifying the Stay was entered on April 30, 2010.  However, the Stay was eventually lifted and Aurora proceeded with foreclosure and, in fact, conducted a foreclosure sale on the Property on September 21, 2010.  Subsequently, Aurora initiated a Complaint for Possession of Real Property in the Landlord Tenant Branch of the Superior Court of the District of Columbia on January 4, 2011.  On February 1, 2011, Plaintiff filed a Verified

Answer Interposing Pleas of Title.  A protective order/undertaking was entered by consent whereby Plaintiff was required to pay $1200.00 into the Court Registry each month.  The case was then certified to the Civil Division.  On November 18, 2011, Plaintiff's Plea of Title Defense was stricken for Plaintiff's failure to make certain protective order payments.  Plaintiff was unable to make certain protective order payments because she was separated from employment. As a result of the Court's striking of the Plaintiff's Plea of Title Defense, the case was recertified to the Landlord Tenant Branch.  On March 6, 2012, the Court granted Defendant's Motion for Summary Judgment and on March 13, 2012 a Writ of Restitution was approved by the Landlord Tenant Branch.

20.     Instead offering the Plaintiff a modification that lowered her payment and re-amortized the arrears, Aurora offered her a series of repayment plans that required substantial final installment payments that Aurora knew or should have known that the Plaintiff would not be able to pay.

21.     Aurora's trade practices of offering the Plaintiff unconscionable repayment terms placed Plaintiff in a position where it was impossible for Plaintiff meet the terms of the repayment plan despite her diligent efforts.

22.     Aurora knew that there was no reasonable probability of payment in full of the obligation of the Plaintiff.

23.     Aurora's trade practice of offering the Plaintiff unconscionable repayment terms wrongfully forced the Plaintiff into foreclosure.

24.     As a result of Aurora's violation of D.C. Code Section 28-3904, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.  Additionally, Plaintiff has been

damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT II
### (Violation of D.C. § 42-815 – All Defendants)

25.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 24 of their Complaint and further alleges as follows:

26.     D.C. Code § 42-815 requires that "[a] foreclosure sale shall not take place unless the **holder of the note** secured by the deed of trust . . . gives written notice of the intention to foreclose . . ." (emphasis added).

27.     A foreclosure sale on the Property occurred on September 21, 2010.  The Notice of Foreclosure Sale recorded on August 20, 2010 as Instrument Number 2010072256 ("Notice of Foreclosure Sale") that was purportedly sent to the Plaintiff stated that Aurora was the noteholder and that James E. Clarke, Esq. was the Trustee.  See Exhibit 6.

28.     The Deed of Trust indicated that the American Brokers Conduit was the lender and that Todd B. Ewing was the Trustee.

29.     The Deed of Appointment of Substitute Trustee was not recorded until August 30, 2010, ten days _after_ the Notice of Foreclosure was recorded naming James E. Clarke, Esq. as the Trustee.  As a result, the Notice of Foreclosure was defective because James E. Clarke, Esq. did not have the authority to act as the Trustee at the time that the Notice of Foreclosure was recorded.  See Exhibit 7.

30.     Additionally, the Deed of Appointment of Substitute Trustee is defective because MERS did not have the authority as merely the "nominee" to appoint the Substitute Trustee.  Only the noteholder has the authority to nominate the Substitute Trustee and, in this case, the

noteholder did not appear as a party to the Deed of Appointment of Substitute Trustee. Moreover, the Deed of Appointment of Substitute Trustee was properly not notarized and, as a result, establishes a third reason for why the Deed of Appointment of Substitute Trustee is defective.

31.     As a result of the defective Notice of Foreclosure Sale, the Trustee's Deed is also defective and not enforceable.  Because of the defective nature of the Trustee's Deed, the Property was not properly transferred to Aurora and accordingly, Aurora is not the record owner of the Property and did not have the authority to foreclose on the property and does not have the authority to maintain the pending Landlord Tenant action against the Plaintiff.  See Exhibit 8.

32.     Defendants violated § 42-815 by failing to reflect the proper noteholder on the Notice of Foreclosure.

33.     Under D.C. Code § 42-815, it is also required that a notice of foreclosure sale accurately reflect that balance owed on the note and the minimum amount to cure that must be current to the time of the issuance of the notice of foreclosure sale.

34.     Defendants violated D.C. Code § 42-815 by failing to accurately state the balance owed on the note and the minimum amount to cure current to the time of the issuance of the Notice of Foreclosure Sale.

35.     Defendants violated D.C. Code § 42-815 by failing to send the Notice of Foreclosure Sale to the Plaintiff properly.

36.     As a result of Defendants' violations of D.C. Code § 42-815, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.  Additionally, Plaintiff has been damaged by

being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

### COUNT III
### (Violation of D.C. Code § 47-1431 – MERS, James E. Clarke, ALG)

37.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 36 of their Complaint and further alleges as follows:

38.     Defendants MERS, James E. Clarke and ALG were required to properly file an assignment of the Deed of Trust to Aurora pursuant to D.C. Code § 47-1431.

39.     Defendants MERS, James E. Clarke and ALG failed to properly file an assignment of the Deed of Trust to Aurora in violation of D.C. Code § 47-1431.

40.     MERS as the "nominee" did not have the authority to assign the Deed of Trust to Aurora and accordingly, the attempted assignment recorded as Instrument Number 2010006399 is defective and not enforceable.

41.     As a result of Defendants violation of D.C. Code § 47-1431, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.  Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

### COUNT IV
### (Violation of D.C. Code § 28-3904 – All Defendants)

42.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 41 of their Complaint and further alleges as follows:

43.     Defendants' trade practices of proceeding with a wrongful foreclosure sale with the erroneous Notice of Foreclosure Sale that did not reflect the proper noteholder and did not

accurately state the amount owed on the note or the cure amount illustrates Defendants misrepresenting material facts with misled the Plaintiff as well as the general public reviewing the Land Records of the District of Columbia.

44.     Defendant Aurora then engaged in the trade practice of filing a wrongful complaint for possession in the Superior Court of the District of Columbia, Civil Division, Landlord Tenant Branch without being the rightful owner of the Property, again misrepresenting material facts which misled the Plaintiff.

45.     The trade practices described in paragraphs 43 and 44 above are in direct violation of D.C. Code § 28-3904.

46.     As a result of Defendants violation of D.C. Code § 28-3904, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.   Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT V
### (Breach of Contract – All Defendants)

47.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 46 of their Complaint and further allege as follows:

48.     Plaintiff has a contract with her lender that was memorialized with the Note that she executed during the refinance transaction for the Property.

49.     Aurora most recently purports to be the lender of the Plaintiff.   Prior to Aurora, American Brokers Conduit was the lender.

50.     The contract between Plaintiff and Aurora was breached by Defendants failing to properly assign the Note and Deed of Trust, failing follow proper procedure in the foreclosure on the Property and failing to properly transfer the property to Aurora.

51.     As a result of the Aurora breaches of the contract, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.  Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT VI
### (Tortious Interference with a Contract – All Defendants)

52.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 51 of their Complaint and further alleges as follows:

53.     As stated in paragraphs 48 through 50 above, a contract existed.

54.     Defendants clearly had knowledge of the contract.

55.     Defendants intentional caused the breach by wrongfully foreclosing on the Property and interfering with the Plaintiff's ability to perform under the Note.

56.     As a result of the Defendants tortious interference with the contract, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.  Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT VII
### (Breach of Duty of Good Faith and Fair Dealing – All Defendants)

57.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 56 of their Complaint and further allege as follows:

58.     Defendants' actions destroyed the Plaintiff's ability to enjoy the benefits of the contract – the quiet use and enjoyment of her home that he had purchased.

59.     Defendants' actions directly interfered with Plaintiff's ownership of her home.

60.     As a result of the Defendants' breach of their duty of good faith and fair dealing, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.  Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT VIII
### (Breach of Fiduciary Duty – James E. Clarke, ALG)

61.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 60 of their Complaint and further alleges as follows:

62.     Defendants James E. Clarke and ALG owe a duty to Plaintiff as the borrower on the Deed Trust.

63.     Defendants James E. Clarke and ALG breached their duty by wrongfully foreclosing on the Property when they proceeded with the erroneous Notice of Foreclosure Sale that failed to state the noteholder and by failing to accurately state the amount owed on the note and the cure amount.

64.     Additionally, Defendants James E. Clarke and ALG attempted to convey title to Aurora with an erroneous Trustee's Deed that contained language reflecting the improper

12

appointment of Defendant James E. Clarke as the Substitute Trustee and the improper transfer of the Property to Aurora.

65.     As a result of the Defendants breach of their fiduciary duty, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.   Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

### COUNT IX
### (Violation of 12 U.S.C. § 2605 – Defendants Aurora and MERS)

66.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 65 of their Complaint and further alleges as follows:

67.     Defendants Aurora and MERS had a requirement pursuant to 12 U.S.C. § 2605 to provide Plaintiff with notice of when the servicing of the loan was assigned, sold or transferred.

68.     Defendants Aurora and MERS violated 12 U.S.C. § 2605 by failing to provide the required notice.

69.     As a result of the Defendants violation of 12 U.S.C. § 2605, Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report.   Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT X
### (Declaratory Relief/Quiet Title – All Defendants)

70.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 69 of their Complaint and further alleges as follows:

71.     This declaratory judgment cause of action is brought for the purpose of determining questions of actual controversy between the parties and terminating uncertainty and controversy giving rise to this proceeding.

72.     The aforesaid actions of Defendant Aurora were unlawful in that Aurora effectively enforced an unlawful contract pursuant to District of Columbia statutory and common law.

73.     Specifically, there exists an actual controversy regarding the justiciable issue between the Plaintiff and Aurora, within the jurisdiction of this Court, involving whether Aurora had the authority to enforce the Note and whether Aurora's foreclosure action against Plaintiff's Property was unlawful.

74.     Aurora contends that they had the legal authority to enforce the Note in the District of Columbia.  Plaintiff contends that did not have the authority to enforce the Note and that its enforcement is unlawful and void as it is repugnant to the District of Columbia common law, statutory law, and public policy.  Plaintiff further contends that this Note should be rendered void, as well as the Deed of Trust as both were signed and consummated by an entity that did not properly assign and/or transfer said Note and Deed of Trust.  As a result, Aurora has no legal right to enforce the Note and Deed of Trust.

75.     Antagonistic claims are present between the parties.  These claims indicate imminent and inevitable litigation.

76.     Plaintiff is entitled to a judgment declaring their rights and responsibilities under the contracts between the parties and further settling the legal relations of the parties.

77.     Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report. Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT XI
### (Equitable Estoppel – All Defendants)

78.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 77 of their Complaint and further allege as follows:

79.     Defendants are stopped from asserting the statute of limitations as an affirmative defense against the Plaintiff due to the Defendants own fraudulent concealment of wrongdoing.

80.     Where Defendants or their agents, predecessors in interest acted as lender, or loan servicer, Plaintiff reasonably and justifiably relied on Defendants fiduciary and agency obligations to disclose the true noteholder in connection with the subject mortgage transaction.

81.     Defendants had actual or constructive knowledge that their conduct was deceptive in that they consciously concealed their scheme to foreclose on the note without having the lawful authority to do so.  These practices are repugnant to the District of Columbia and Federal law as well as the Defendants agency and fiduciary duties.

82.     The purpose of the statute of limitations period are satisfied because Defendants cannot claim prejudice to a late filing wherein the Plaintiff filed suit promptly upon discovering essential facts that give rise to the claims described herein, which the Defendants knowingly and willfully concealed.

## COUNT XII
### (Unjust Enrichment – All Defendants)

83.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 82 of their Complaint and further allege as follows:

84.     As a result of their wrongful acts and omissions described herein, Defendants have been unjustly enriched at the expense of the Plaintiff.  Defendants have wrongfully benefited by charging and receiving artificially inflated mortgage payments from Plaintiff.

85.     It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained by them from their wrongful conduct.  Plaintiff is entitled to full restitution and/or disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful acts.

86.     Plaintiff has suffered irreparable and incalculable impairment to their credit and reputation due to the reporting of the wrongful foreclosure sale on her credit report. Additionally, Plaintiff has been damaged by being forced to pay money to protect her occupancy and interest in the Property after the wrongful foreclosure sale.

## COUNT XIII
### (Injunctive Relief – All Defendants)

87.     The Plaintiff re-alleges the allegations set forth in paragraphs 1 through 86 of their Complaint and further allege as follows:

88.     The Plaintiff is also seeking a permanent injunction against Defendants to prevent Defendants from evicting the Plaintiff, taking possession of the Property as well as selling the Property to a third party.

89.     The Plaintiff will suffer irreparable harm if the Defendants are allowed to take possession of the Property and/or to sell the Property to a third party.  The Property serves as the

16

Plaintiff's home where she raises her two children.  If the Defendants are allowed to take possession of the real property and/or sell the Property to another party, Plaintiff will encounter significant stress and anguish by having the Plaintiff and her children displaced from their home. This would cause Plaintiff to endure an extreme hardship.

90.    Repayment of the money alone will not adequately repair the harm to Plaintiff. Simply repaying Plaintiff the money spent to keep her home would not be sufficient to make the Plaintiff whole.

91.    The balance of the hardships are in Plaintiff's favor and an injunction is appropriate in this case.  The Plaintiff would have to go through tremendous stress and effort to find another home to live in suitable for the Plaintiff and her children.  Finding another home and schools for her children are time consuming processes that would pose a substantial hardship on the Plaintiff.

92.    It would not be in the public interest to allow the Defendants to take possession of the Property and/or sell the Property to a third party.  Such a decision would put the Plaintiff at an unfair disadvantage in the process of saving her home.

93.    Therefore, Plaintiff should be entitled to a permanent injunction preventing the Defendant from taking possession of the Property and/or selling the Property to a third party.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff  pursuant to the District of Columbia Consumer Protection Procedures Act, other causes of action described hereinabove and the Court's own equitable powers, request that this Court:

A.      Enter Declaratory Judgment that Aurora at all times relevant herein failed to become the noteholder for the Deed of Trust in question.

B.      Enter Declaratory Judgment that the September 21, 2010 unlawful foreclosure sale initiated by Aurora is void.

C.      Enter Declaratory Judgment that the Trustee's Deed recorded among the land records of the District of Columbia on October 26, 2010 as Instrument Number 2010094617 is declared void.

D.      Enter Declaratory Judgment that the Deed of Trust lien on the Plaintiff's property recorded on April 4, 2007 as Instrument Number 2007046303 be declared null and void and of no further force or effect.

E.      Enter Declaratory Judgment vesting the Property title in fee simple as sole owner to the Plaintiff.

F.      Enter Declaratory Judgment declaring that Plaintiff has absolute ownership and right of disposition of the Property.

G.      Enter a Permanent Injunction against the Defendants;

H.      Award statutory damages, including, without limitation to, treble damages as permitted pursuant to D.C. Code § 3905.

I.      Award Plaintiff costs and reasonable attorney fees;

J.      Award general damages, actual damages and punitive damages to be established at trial;

K.      Award such other relief as the Court deems appropriate.

### REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury.

Respectfully Submitted,

Craig A. Butler, Esquire
Bar # 451320
The Butler Law Group, PLLC
1425 K Street, NW, Suite 350
Washington, DC 20005
(202) 587-2773
(202) 591-1727 f
cbutler@blgnow.com

## VERIFICATION

I, **Lisa Koker**, declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___2/___ day of ___MARCH___, ___2012___
         (date)           (month)         (year)

LISA M. Koker
_____
Printed Name

_Lisa M. Koker_
_____
Signature

Washington, D.C.
_____
City and State, or Other Location

202-269-1606
_____
Phone Number

LT1-5-2007846383-1

2/2

Return To:
American Brokers Conduit
4650 Regent Blvd. Suite 100
Irving, TX 75063-2250

AFTER RECORDING RETURN TO:
PINNACLE TITLE AND ESCROW, INC
51 MONROE STREET #1505
ROCKVILLE, MARYLAND 20850
File #07-31740
tax id  Lot 0021, Square 3796
Title Insurer: Commonwealth Land Title Insurance Company

Prepared By:
Kevin Decker
5160 Parkstone Drive
Suite 190A
Chantilly, VA
20151

refinance

LT2-6-8-24

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

MIN  100024200016959781

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated March 26, 2007 ,
together with all Riders to this document.
(B) "Borrower" is Lisa Koker

Borrower's address is  4754 6th Place NE, Washington, DC  20017
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York

DISTRICT OF COLUMBIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
DOC #:323121   APPL #:0001695978
-6A(DC) (0005)     Form 3009 1/01
0011 9905.02
Page 1 of 15     Initials:
VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT 1

Lender's address is  538 Broadhollow Road, Melville, NY  11747

(D) "Trustee" is  Todd B. Ewing

Trustee's address is  5335 Wisconsin Ave. NW #700, Washington, DC 20015

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  March 26, 2007
The Note states that Borrower owes Lender Three Hundred Sixty Five Thousand and No/100                                                                         Dollars
(U.S. $ 365,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   April 1, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Prepayment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC #:323322                APPL #:0001695978

-6A(DC) (0305)                Page 2 of 13          Initials: _____          Form 3009  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia: SEE ATTACHED LEGAL DESCRIPTION *Schedule A*

Parcel ID Number: 3796//0071                                    which currently has the address of
4754 6th Place NE                                                                              [Street]
Washington, District of Columbia   20017          [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC  #:321323                          APPL #:0001695978

-6A(DC) (0005)                          Page 3 of 15                                   Form 3009  1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien, in legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

DOC #:321326                        APPL #:0001695978

-6A(DC) (0005)                      Page 6 of 15                        Form 3009  1/01

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

DOC #:321328                        APPL #:0001695978              Initials: _____

4A(DC) (0005)                          Page 8 of 15                           Form 3009  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

DOC #:321329            APPL #:0001695978

-6A(DC) (0005)                    Page 9 of 15                              Form 3009  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC #:321332                  APPL #:0001695978

-6A(DC) (0005)                Page 12 of 15                                    Form 3009   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of          5.0 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

DOC  #:321333                    APPL #:0001695978

-6A(DC) (0005)                    Page 13 of 15                    Form 3009  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                              -Borrower

_____
Peter Martin

                                                  Lisa Koker
                                                  4754 6th Place NE
                                                  Washington, DC  20017          (Address)

_____          _____ (Seal)
                                                                              -Borrower

                                                                              (Address)

_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower

              (Address)                                       (Address)

_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower

              (Address)                                       (Address)

_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower

              (Address)                                       (Address)

* Signs as "borrower" solely for the purpose of waiving homestead rights.

DOC #:321334                    APPL #:0001695978

-6A(DC) (0005)                          Page 14 of 15                    Form 3089 1/01

State of Maryland
DISTRICT OF COLUMBIA, ss:

I, Debbie W. Yuen , a Notary Public in and for the District
of Columbia, do hereby certify that Lisa Koker
Maryland

personally known to me as the person(s) who executed the foregoing instrument bearing date of    26th
day of    March, 2007       , personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this    26th   day of   March   2007   .

_____
Notary Public, D.C. Maryland.

Lender Name and Address:
American Brokers Conduit
538 Broadhollow Road
Melville, NY 11747

Trustee Name and Address:
Todd B. Ewing
5335 Wisconsin Ave. NW #700
Washington, DC 20015

DOC #:321335                    APPL #:0001695978

___6A(DC) (0005)                    Page 15 of 15                                    Form 3009  1/01

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

## WORKOUT AGREEMENT

### BY AND BETWEEN AURORA LOAN SERVICES

#### AND

#### Lisa Koker

Property Address: 4754 6th Pl Ne          Loan No. 0124353079
                  Washington DC 20017

This Workout Agreement is made June 17, 2008, by and between AURORA LOAN
SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE 69361,
and Lisa Koker ("Customer").

WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 03-26-07, executed and delivered by
Customer, in the original principal amount of $ 365,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 03-26-07, (the "Security Instrument"), on the property
located at the address specified above (the "Property"). The Note and
Security Instrument are collectively referred to as the "Loan Documents".

WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 12,318.11, as more particularly set forth below:

| | | |
|---|---|---:|
| Unpaid monthly payment(s) of PITI* from 01-01-08 through and including | | |
| 06-17-08 | $ | 9,729.96 |
| Accrued Late Charges | | 216.33 |
| NSF Charges | | .00 |
| Legal Fees | | 2,842.50 |
| Corporate Advances** | | 119.00 |
| Other Fees*** | | .00 |
| Minus Credit (suspense balance/partial payment) | | 589.68 |
| Total Amount Due (the "Arrearage") | $ | 12,318.11 |

---

* "PITI" means the monthly payment of principal, interest, and escrows,
  required, for taxes and insurance premium installments.
** "Corporate Advances" include, but are not limited to, property
  inspection fees, property preservation fees, legal fees, foreclosure
  fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
  title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances
  and Speed ACH fees.



EXHIBIT 2

AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

3617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. 0124353079                                    Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the right to accelerate, and to require Customer to make immediate payment in full, all of the sums owed under the Note and secured by the Security Instrument, (ii) has so accelerated and declared due in full all such sums, and (iii) may have already commenced foreclosure proceedings to sell the Property.

WHEREAS, as of the date of execution of the Agreement, Lender commenced Foreclosure proceedings to sell the property on 06/03/08A Fc by legal filing in the county and state where the Property is located closure sale has been scheduled for 07/08/08.

WHEREAS, customer has requested Lender's forbearance in exercising its rights and remedies under the default provisions of the Loan Documents and with regard to any foreclosure action that may now be pending.

WHEREAS, Customer has requested and Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. <u>Term</u>.  This Agreement shall expire on the "Expiration Date," as defined in Attachment A.

2. <u>Lenders Forbearance</u>.  Lender shall forbear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the Loan Documents, provided there is no "Default", as such term is defined in paragraph 5.

3. <u>Customer's Admissions</u>.  Customer admits that the Arrearage is correct and is currently owing under the Loan Documents, and represents, agrees and acknowledges that there are no defenses, offsets, or counterclaims of any nature whatsoever to any of the Loan Documents or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of the Customer and Lender and that, to the extent allowed by applicable law, any such foreclosure sale may be postponed from time to time until the loan evidenced by the Note is fully reinstated or the foreclosure sale is consummated.  Lender shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions of this Agreement and Attachment A have been fully performed.

4. <u>Terms of Workout</u>.  See Attachment A, which is made a part hereof.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

3617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079                                        Page 3 of 5

5. <u>Default</u>. If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer. In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

6. <u>No Waiver</u>. Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.1

7. <u>Status of Default and Foreclosure</u>. Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full.  Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults. Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law. In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

8. <u>Limited Modification</u>. Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

1 A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

3617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 503-723-7648

Loan No. 0124353079                                            Page 4 of 5

9. <u>Application of Payments</u>. The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

10. <u>Methods of Making Payments</u>. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A. Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

11. <u>Credit Reporting.</u> The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement. However, Lender may disclose that Customer is in a repayment or work-out plan. This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

12. <u>Property Taxes, Insurance, and Other Amounts</u>. If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents. Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

13. <u>The Entire Agreement</u>. This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof. This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein. This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.


AURORA LOAN SERVICES LLC

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. 0124353079                                                    Page 5 of 5

14.  Time is of the Essence.  The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement.  The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement.  Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

15.  Assignment by Customer Prohibited.  This Agreement shall be non-transferable by Customer.  However, if the legal or beneficial interest or the servicing of this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

16.  Severability.  To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the Agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either party.

17.  Execution in Counterparts.  This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement. Facsimile signatures shall be deemed as valid as originals.

18.  Customer Contact.  If Customer has any questions regarding this matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: ___6/29/08___                    _Lisa M Koker_____
                                         Lisa Koker Borrower

Dated: _____                   _____
Aurora Loan Services
Dated: _____                   _____

Aurora Loan Services is a debt collector.  Aurora is attempting to collect a debt and any information obtained will be used for that purpose.  However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

## ATTACHMENT A - REPAYMENT PLAN

a.1   For purposes of repayment of the Arrearage, Customer shall remit
      an initial installment of $1622.00, which will be due on
      or before 07/01/2008.  Consecutive monthly payments each in the
      amount of $1624.00 will be due on or before the 1st
      day of every month (each, a "Due Date"), commencing 080108
      continuing through and including 100108, with the last
      installment in the amount of $14933.75.

      On or before 07/01/2008 (the "Agreement Return Date"),
      Customer shall execute and return the Agreement, including this
      Attachment A, in accordance with the following instructions:

         Overnight Mail:              USPS Mail:
         Aurora Loan Services         Aurora Loan Services
         Attention: Home Retention    Attention: Home Retention
         2617 College Park            P.O. Box 1706
         Scottsbluff, NE 69361        Scottsbluff, NE 69363-1706

      The Agreement will be of no force and effect unless Lender receives
      the executed Agreement, including Attachment A, as well as the first
      Plan payment by the Agreement Return Date.  Customer shall remit
      to Lender the first Plan payment, in the amount specified above,
      made payable to Aurora Loan Services in certified funds by
      means of cashier's check, money order, Western Union (code city:
      Bluff, NE), or certified check.  All Plan payments, including the
      first Plan payment, shall contain the Lender's loan number shown
      in the Agreement and, unless otherwise agreed to by the Lender,
      shall be payable in certified funds as described above and are to be
      sent to Lender's Payment Processing Center in accordance with the
      following instructions:

         Overnight Mail:              USPS Mail:
         Aurora Loan Services         Aurora Loan Services
         Attention: Cashiering        Attention: Cashiering
         10350 Park Meadows Drive     P.O. Box 5180
         Littleton, CO 80124          Denver, CO 80217-5180

a.2   The amount of each Plan payment specified above includes both
      (1) the regularly scheduled monthly payment, plus
      (2) the portion of the Arrearage specified above.
      Plan payments are to be paid on or before the 1st day
      of every month (each, a "Due Date").  Lender must receive each
      Plan payment by the Due Date of each month.  The Agreement
      shall expire on the Due Date of the last Plan payment
      contemplated by section a.1 above (the "Expiration Date").

b.    In the event Customer cures the Arrearage by making all Plan
      payments on or before the Expiration Date, and is current with the
      payments then due, and no default then exists under the Loan
      Documents and the Agreement, Lender shall consider the Note and
      Security Instrument to be current and in effect according to their
      original terms and conditions. Monthly billing statements that
      Customer shall receive thereafter will reflect the current status
      of the loan evidenced by the Note and Customer's regular monthly
      payment amount.  Customer agrees to then resume making the



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

3617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. 0124353079

      regular monthly payments required under the Note. Due to
adjustments that periodically occur to tax and insurance premium
payments, and, if applicable, in interest rates on adjustable rate
mortgage loans, over the course of an agreement such as this one
it is possible that some adjustment to the regularly scheduled
monthly payments under the Note may occur which could impact
the cure of the Arrearage. Customer acknowledges that this may
occur and that an adjustment may be necessary to the final Plan
payment that will be due at the Expiration Date. In the event such
an adjustment is necessary, the Note and Security Instrument shall
not be considered current until Customer has paid any additional
amounts required to cure the Arrearage as a result of the
adjustment(s).

      IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated: _____6/29/08_____    _____
                                        Lisa Koker Borrower

Dated: _____    _____

Aurora Loan Services

Dated: _____    _____



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

WORKOUT AGREEMENT

BY AND BETWEEN AURORA LOAN SERVICES

AND

Lisa Koker

Property Address: 4754 6th Pl Ne                    Loan No. 0124353079
                  Washington DC 20017

This Workout Agreement is made November 08, 2008, by and between AURORA LOAN
SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE  69361,
and Lisa Koker ("Customer").

     WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 03-26-07, executed and delivered by
Customer, in the original principal amount of $ 365,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 03-26-07, (the "Security Instrument"), on the property
located at the address specified above (the "Property").  The Note and
Security Instrument are collectively referred to as the "Loan Documents".

     WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 15,882.10, as more particularly set forth below:

| | | |
|---|---|---|
| Unpaid monthly payment(s) of PITI* from 03-01-08 through and including | | |
| 11-08-08 | $ | 15,843.69 |
| Accrued Late Charges | | 216.33 |
| NSF Charges | | .00 |
| Legal Fees | | .00 |
| Corporate Advances** | | .00 |
| Other Fees*** | | .00 |
| Minus Credit (suspense balance/partial payment) | | 177.92 |
| Total Amount Due (the "Arrearage") | $ | 15,882.10 |

  * "PITI" means the monthly payment of principal, interest, and escrows,
     required, for taxes and insurance premium installments.
 ** "Corporate Advances" include, but are not limited to, property
    inspection fees, property preservation fees, legal fees, foreclosure
    fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
    title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances
    and Speed ACH fees.



EXHIBIT 3

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079                                    Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the right to accelerate, and to require Customer to make immediate payment in full, all of the sums owed under the Note and secured by the Security Instrument, (ii) has so accelerated and declared due in full all such sums, and (iii) may have already commenced foreclosure proceedings to sell the Property.

WHEREAS, as of the date of execution of the Agreement, Lender commenced Foreclosure proceedings to sell the property on 06/03/08 by legal filing in the county and state where the Property is located A Foreclosure sale has not yet been scheduled.

WHEREAS, customer has requested Lender's forbearance in exercising its rights and remedies under the default provisions of the Loan Documents and with regard to any foreclosure action that may now be pending.

WHEREAS, Customer has requested and Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. Term.  This Agreement shall expire on the "Expiration Date," as defined in Attachment A.

2. Lenders Forbearance.  Lender shall forbear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the Loan Documents, provided there is no "Default", as such term is defined in paragraph 5.

3. Customer's Admissions.  Customer admits that the Arrearage is correct and is currently owing under the Loan Documents, and represents, agrees and acknowledges that there are no defenses, offsets, or counterclaims of any nature whatsoever to any of the Loan Documents or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of the Customer and Lender and that, to the extent allowed by applicable law, any such foreclosure sale may be postponed from time to time until the loan evidenced by the Note is fully reinstated or the foreclosure sale is consummated.  Lender shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions of this Agreement and Attachment A have been fully performed.

4. Terms of Workout.  See Attachment A, which is made a part hereof.



# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. 0124353079                                          Page 3 of 5

5. <u>Default</u>.  If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer.  In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

6. <u>No Waiver</u>.  Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings.  Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.[1]

7. <u>Status of Default and Foreclosure</u>.  Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full.  Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults.  Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law.  In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

8. <u>Limited Modification</u>.  Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

[1] A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.



# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079                                           Page 4 of 5

9.  Application of Payments.  The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment.  If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

10.  Methods of Making Payments.  All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A.  Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

11.  Credit Reporting.  The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter.  Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement.  However, Lender may disclose that Customer is in a repayment or work-out plan.  This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

12.  Property Taxes, Insurance, and Other Amounts.  If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents.  Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

13.  The Entire Agreement.  This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof.  This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein.  This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.



# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079                                        Page 5 of 5

14.  <u>Time is of the Essence.</u>  The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement.  The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement.  Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

15.  <u>Assignment by Customer Prohibited</u>.  This Agreement shall be non-transferable by Customer.  However, if the legal or beneficial interest or the servicing of this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

16.  <u>Severability</u>.  To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the Agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either party.

17.  <u>Execution in Counterparts</u>.  This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement.  Facsimile signatures shall be deemed as valid as originals.

18.  <u>Customer Contact</u>.  If Customer has any questions regarding this matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: _11/25/08_                    _____
                                     Lisa Koker Borrower

Dated: _____           _____
Aurora Loan Services
Dated: _____           _____

Aurora Loan Services is a debt collector.  Aurora is attempting to collect a debt and any information obtained will be used for that purpose.  However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.



# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

## ATTACHMENT A - REPAYMENT PLAN

a.1   For purposes of repayment of the Arrearage, Customer shall remit an initial installment of $1709.00, which will be due on or before 12/01/2008.  Consecutive monthly payments each in the amount of $1709.00 will be due on or before the 1st day of every month (each, a "Due Date"), commencing 010109 continuing through and including 030109, with the last installment in the amount of $18240.74.

On or before 12/01/2008 (the "Agreement Return Date"), Customer shall execute and return the Agreement, including this Attachment A, in accordance with the following instructions:

| Overnight Mail: | USPS Mail: |
|---|---|
| Aurora Loan Services | Aurora Loan Services |
| Attention: Home Retention | Attention: Home Retention |
| 2617 College Park | P.O. Box 1706 |
| Scottsbluff, NE 69361 | Scottsbluff, NE 69363-1706 |

The Agreement will be of no force and effect unless Lender receives the executed Agreement, including Attachment A, as well as the first Plan payment by the Agreement Return Date.  Customer shall remit to Lender the first Plan payment, in the amount specified above, made payable to Aurora Loan Services in certified funds by means of cashier's check, money order, Western Union (code city: Bluff, NE), or certified check.  All Plan payments, including the first Plan payment, shall contain the Lender's loan number shown in the Agreement and, unless otherwise agreed to by the Lender, shall be payable in certified funds as described above and are to be sent to Lender's Payment Processing Center in accordance with the following instructions:

| Overnight Mail: | USPS Mail: |
|---|---|
| Aurora Loan Services | Aurora Loan Services |
| Attention: Cashiering | Attention: Cashiering |
| 10350 Park Meadows Drive | P.O. Box 5180 |
| Littleton, CO 80124 | Denver, CO 80217-5180 |

a.2   The amount of each Plan payment specified above includes both (1) the regularly scheduled monthly payment, plus (2) the portion of the Arrearage specified above. Plan payments are to be paid on or before the 1st day of every month (each, a "Due Date").  Lender must receive each Plan payment by the Due Date of each month.  The Agreement shall expire on the Due Date of the last Plan payment contemplated by section a.1 above (the "Expiration Date").

b.    In the event Customer cures the Arrearage by making all Plan payments on or before the Expiration Date, and is current with the payments then due, and no default then exists under the Loan Documents and the Agreement, Lender shall consider the Note and Security Instrument to be current and in effect according to their original terms and conditions. Monthly billing statements that Customer shall receive thereafter will reflect the current status of the loan evidenced by the Note and Customer's regular monthly payment amount.  Customer agrees to then resume making the



# ÀURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079

regular monthly payments required under the Note. Due to
adjustments that periodically occur to tax and insurance premium
payments, and, if applicable, in interest rates on adjustable rate
mortgage loans, over the course of an agreement such as this one
it is possible that some adjustment to the regularly scheduled
monthly payments under the Note may occur which could impact
the cure of the Arrearage. Customer acknowledges that this may
occur and that an adjustment may be necessary to the final Plan
payment that will be due at the Expiration Date. In the event such
an adjustment is necessary, the Note and Security Instrument shall
not be considered current until Customer has paid any additional
amounts required to cure the Arrearage as a result of the
adjustment(s).

IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated: ___11/25/08___                    _____
                                         Lisa Koker Borrower

Dated: _____                    _____

Aurora Loan Services

Dated: _____                    _____



# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

WORKOUT AGREEMENT

BY AND BETWEEN AURORA LOAN SERVICES

AND

Lisa Koker

Property Address: 4754 6th Pl Ne                    Loan No. 0124353079
                  Washington DC 20017

This Workout Agreement is made February 06, 2009, by and between AURORA LOAN
SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE  69361,
and Lisa Koker ("Customer").

WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 03-26-07, executed and delivered by
Customer, in the original principal amount of $ 365,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 03-26-07, (the "Security Instrument"), on the property
located at the address specified above (the "Property").  The Note and
Security Instrument are collectively referred to as the "Loan Documents".

WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 22,818.33, as more particularly set forth below:

Unpaid monthly payment(s) of PITI* from 04-01-08 through and including
02-06-09                                      $     19,836.26
Accrued Late Charges                                    216.33
NSF Charges                                                .00
Legal Fees                                            2,925.00
Corporate Advances**                                    107.00
Other Fees***                                             .00
Minus Credit (suspense balance/partial payment)         266.26
Total Amount Due (the "Arrearage")            $     22,818.33

---

  * "PITI" means the monthly payment of principal, interest, and escrows,
    required, for taxes and insurance premium installments.
 ** "Corporate Advances" include, but are not limited to, property
    inspection fees, property preservation fees, legal fees, foreclosure
    fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
    title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances
    and Speed ACH fees.



EXHIBIT 4

AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079                                    Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the
right to accelerate, and to require Customer to make immediate payment in
full, all of the sums owed under the Note and secured by the Security
Instrument, (ii) has so accelerated and declared due in full all such
sums, and (iii) may have already commenced foreclosure proceedings to
sell the Property.

WHEREAS, as of the date of execution of the Agreement,
Lender has not commenced Foreclosure proceedings to sell the property.A Foreclo
by legal filing in the county and state where the Property is located
sure sale has been scheduled for 03/10/09.

WHEREAS, customer has requested Lender's forbearance in
exercising its rights and remedies under the default provisions of the
Loan Documents and with regard to any foreclosure action that may now
be pending.

WHEREAS, Customer has requested and Lender has agreed to allow
Customer to repay the Arrearage pursuant to a loan work-out arrangement
on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual
covenants herein contained, the parties hereto agree as follows:

1. Term.  This Agreement shall expire on the "Expiration Date,"
as defined in Attachment A.

2. Lenders Forbearance.  Lender shall forbear from exercising any
or all of its rights and remedies now existing or arising during the
term of this Agreement under the Loan Documents, provided there is no
"Default", as such term is defined in paragraph 5.

3. Customer's Admissions.  Customer admits that the Arrearage
is correct and is currently owing under the Loan Documents, and
represents, agrees and acknowledges that there are no defenses, offsets,
or counterclaims of any nature whatsoever to any of the Loan Documents
or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a
foreclosure sale, made during the term of this Agreement or in
anticipation of this Agreement, are done by mutual consent of the
Customer and Lender and that, to the extent allowed by applicable law,
any such foreclosure sale may be postponed from time to time until the
loan evidenced by the Note is fully reinstated or the foreclosure sale is
consummated.  Lender shall be under no obligation to dismiss a pending
foreclosure proceeding until such time as all terms and conditions of
this Agreement and Attachment A have been fully performed.

4. Terms of Workout.  See Attachment A, which is made a part
hereof.


EQUAL HOUSING
LENDER   AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079                                      Page 3 of 5

5. <u>Default</u>.  If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer.  In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

6. <u>No Waiver</u>.  Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings.  Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.1

7. <u>Status of Default and Foreclosure</u>.  Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full.   Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults.  Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law.  In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

8. <u>Limited Modification</u>.  Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

1 A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.



EQUAL HOUSING
LENDER   AURORA LOAN SERVICES LLC

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. 0124353079                                          Page 4 of 5

9.  Application of Payments.  The payments received by Lender from
Customer pursuant to this Agreement shall be applied, at Lender's sole
option, first to the earliest monthly payment under the Note that is due.
Any amounts received by Lender that are less than the full payment under
then due and owing under this Agreement shall be, at Lender's sole
option, (1) returned to Customer, or (2) held by Lender in partial or
suspense payment balance until sufficient sum is received by Lender to
apply a full payment.  If this Agreement is canceled and/or terminated
for any reason, any remaining funds in this partial or suspense payment
balance shall be credited towards Customer's remaining obligation
owing in connection with the loan and shall not be refunded.

10.  Methods of Making Payments.  All payments made to Lender under
this Agreement shall (i) contain the Lender's loan number shown above,
(ii) unless otherwise agreed to by the Lender, be payable in certified
funds by means of cashier's check, Western Union (code city: Bluff,NE)
money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES
as specified in Attachment A.  Any payment made other than strictly
pursuant to the requirements of this paragraph 10 and Attachment A shall
not be considered to have been received by Lender, although Lender may,
in its sole discretion, decide to accept any non-conforming payment.

11.  Credit Reporting.  The payment status of Customer's loan in
existence immediately prior to execution of this Agreement will be
reported monthly to all credit reporting agencies for the duration of
this Agreement and thereafter.  Accordingly, Lender will report the
loan subject to this Agreement as delinquent if the loan is not paid
current under the Loan Documents, even if Customer makes timely payments
to Lender under this Agreement.  However, Lender may disclose that
Customer is in a repayment or work-out plan.  This Agreement does not
constitute an agreement by Lender to waive any reporting of the
delinquency status of loan payments.

12.  Property Taxes, Insurance, and Other Amounts.  If Customer's
loan is not escrowed for taxes and insurance premium payments, it is
Customer's responsibility to pay all property taxes, premiums for
insurance, and all other amounts Customer agreed to pay as required
under the terms of the Loan Documents.  Customer's failure to pay
property taxes, amounts owed on any senior lien security instrument,
other amounts that may attain priority over the Security Instrument,
or insurance premiums, in each case before their due date, shall
constitute a Default hereunder.

13.  The Entire Agreement.  This Agreement sets forth all of the
promises, covenants, agreements, conditions and understandings between
the parties hereto with respect to the subject matter hereof.  This
Agreement supersedes all prior understandings, inducements or conditions,
express or implied, oral or written, with respect thereto except as
contained or referred to herein.  This Agreement may not be amended,
waived, discharged or terminated orally but only by an instrument in
writing.

EQUAL HOUSING
LENDER  AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. 0124353079                                        Page 5 of 5

14. _Time is of the Essence._ The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement. The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement. Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

15. _Assignment by Customer Prohibited._ This Agreement shall be non-transferable by Customer. However, if the legal or beneficial interest or the servicing of this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

16. _Severability._ To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the Agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either party.

17. _Execution in Counterparts._ This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement. Facsimile signatures shall be deemed as valid as originals.

18. _Customer Contact._ If Customer has any questions regarding this matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: _____     _____
                                    Lisa Koker Borrower

Dated: _____     _____
Aurora Loan Services
Dated: _____     _____

Aurora Loan Services is a debt collector. Aurora is attempting to collect a debt and any information obtained will be used for that purpose. However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.



EQUAL HOUSING
LENDER   AURORA LOAN SERVICES LLC.

## AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

ATTACHMENT A - REPAYMENT PLAN

a.1  For purposes of repayment of the Arrearage, Customer shall remit
an initial installment of $3244.00, which will be due on
or before 03/01/2009.  Consecutive monthly payments each in the
amount of $1731.00 will be due on or before the 1st
day of every month (each, a "Due Date"), commencing 040109
continuing through and including 060109, with the last
installment in the amount of $23597.97.

On or before 03/01/2009 (the "Agreement Return Date"),
Customer shall execute and return the Agreement, including this
Attachment A, in accordance with the following instructions:

| Overnight Mail: | USPS Mail: |
| Aurora Loan Services | Aurora Loan Services |
| Attention: Home Retention | Attention: Home Retention |
| 2617 College Park | P.O. Box 1706 |
| Scottsbluff, NE 69361 | Scottsbluff, NE 69363-1706 |

The Agreement will be of no force and effect unless Lender receives
the executed Agreement, including Attachment A, as well as the first
Plan payment by the Agreement Return Date.  Customer shall remit
to Lender the first Plan payment, in the amount specified above,
made payable to Aurora Loan Services in certified funds by
means of cashier's check, money order, Western Union (code city:
Bluff, NE), or certified check.  All Plan payments, including the
first Plan payment, shall contain the Lender's loan number shown
in the Agreement and, unless otherwise agreed to by the Lender,
shall be payable in certified funds as described above and are to be
sent to Lender's Payment Processing Center in accordance with the
following instructions:

| Overnight Mail: | USPS Mail: |
| Aurora Loan Services | Aurora Loan Services |
| Attention: Cashiering | Attention: Cashiering |
| 10350 Park Meadows Drive | P.O. Box 5180 |
| Littleton, CO 80124 | Denver, CO 80217-5180 |

a.2  The amount of each Plan payment specified above includes both
(1) the regularly scheduled monthly payment, plus
(2) the portion of the Arrearage specified above.
Plan payments are to be paid on or before the 1st day
of every month (each, a "Due Date").  Lender must receive each
Plan payment by the Due Date of each month.  The Agreement
shall expire on the Due Date of the last Plan payment
contemplated by section a.1 above (the "Expiration Date").

b.   In the event Customer cures the Arrearage by making all Plan
payments on or before the Expiration Date, and is current with the
payments then due, and no default then exists under the Loan
Documents and the Agreement, Lender shall consider the Note and
Security Instrument to be current and in effect according to their
original terms and conditions. Monthly billing statements that
Customer shall receive thereafter will reflect the current status
of the loan evidenced by the Note and Customer's regular monthly
payment amount.  Customer agrees to then resume making the



# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. 0124353079

regular monthly payments required under the Note. Due to adjustments that periodically occur to tax and insurance premium payments, and, if applicable, in interest rates on adjustable rate mortgage loans, over the course of an agreement such as this one it is possible that some adjustment to the regularly scheduled monthly payments under the Note may occur which could impact the cure of the Arrearage. Customer acknowledges that this may occur and that an adjustment may be necessary to the final Plan payment that will be due at the Expiration Date. In the event such an adjustment is necessary, the Note and Security Instrument shall not be considered current until Customer has paid any additional amounts required to cure the Arrearage as a result of the adjustment(s).

IN WITNESS HEREOF, the parties hereto have caused this Attachment A to be duly executed as of the date signed below.

Dated: _____      _____

                                       Lisa Koker Borrower

Dated: _____      _____

Aurora Loan Services

Dated: _____      _____

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

February 06, 2009

3640124353079534LM02902-06-09

RE:   Loan No. 0124353079
      Borrower(s): Lisa Koker

      Property Address: 4754 6th Pl Ne
                        Washington DC 20017

           ITEMIZATION OF FEES, COSTS AND OTHER CHARGES

Dear Customer(s):

This Addendum supplements the Attached Letter.

Below is a detailed itemization of the unpaid fees, costs and other
charges due on the above-referenced loan.

| Description | Unpaid Balance |
| --- | --- |
| Post Liquidation Transaction | $12.00 |
| Property Value Fee | $95.00 |



EQUAL HOUSING
LENDER   AURORA LOAN SERVICES LLC.



David W. Draper, Jr. (DC, MD, VA)
L. Darren Goldberg (DC, MD, VA)

James E. Clarke (DC, FL, MD, VA, WV)
Rita Ting-Hopper (CA, DC, MD)
Adam Hiller (DC, DE, MD)

Renee Dyson (DC, MD)
Kristen J. Misleh (DC, VA)
Dean L. Robinson (DC, MD, VA)
Michelle Berkeley-Ayres (DE)

Thomas D.H. Barnett (DE)
(Of Counsel)

803 Sycolin Road
Leesburg, Virginia 20175
Telephone: 703-777-2448
Facsimile: 703-940-9112
www.drapgold.com

February 13, 2009

BY CERTIFIED MAIL RETURN RECEIPT REQUESTED and FIRST CLASS MAIL

Lisa Koker
4754 6th Place NE
Washington, DC 20017

RE:                      Lisa Koker
Our File No.             215771
Property Address:        4754 6th Place NE
                         Washington, DC 20017

Dear Sir or Madam:

Please be advised that we have been requested by Aurora Loan Services ("Servicer") to foreclose on the Property described above ("Property"). The Property is encumbered by a Deed of Trust, the security for a promissory note in the original principal amount of $365,000.00 payable to the Lender. Our Title report indicates you or your company may have an interest in the above property.

We are hereby notifying you that a foreclosure sale of the Property will take place on the date, time, place, and terms as per the enclosed advertisement and the Property will be sold then and there to the highest bidder. A copy of this letter is being sent to you by regular mail.

If you wish to obtain updated payoff or reinstatement figures, you may make your request by any of the means listed below:

Web Site:      www.drapgold.com
E-mail:        po@drapgold.com  (for payoff figures)
               ri@drapgold.com   (for reinstatement figures)
Facsimile:     (703) 940-9112
Telephone:     (703) 777-2448

Please be advised that processing a request for an updated payoff or reinstatement quote may require up to ten (10) business days. If you seek to satisfy or reinstate your loan prior to a scheduled foreclosure sale date, you are urged to request the figures immediately, as time is of the essence.

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

                         Sincerely,

                         Draper & Goldberg, PLLC

Enclosure
cc:    Aurora Loan Services

EXHIBIT 5

GOVERNMENT OF THE DISTRICT OF COLUMBIA
OFFICE OF TAX AND REVENUE


LT1-5-2010072256-1




LT2-0-0-2

RECORDER OF DEEDS

1101 4ᵗʰ STREET, S.W.
WASHINGTON, DC 20024

NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
OR CONDOMINIUM UNIT

(Pursuant to Public Law 90-566, approved October 12, 1968)

TO: (List Name and address of each owner of the real property encumbered by said deed of
trust, mortgage, or security instrument.)

Lisa Koker
4754 6th Pl., NE, Washington, DC 20017
(202) 529-7590

Occupant
4754 6th Pl., NE, Washington, DC 20017

FROM: James E. Clarke, Esq.          PHONE: 703-777-2448

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY
THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL
PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A
FORECLOSURE SALE TO BE HELD AT THE OFFICE OF Alex Cooper Auctioneers, Inc.,
5301 Wisconsin Ave., N.W., Suite 750, Washington, DC 20015 ON **September 21, 2010** at
**10:47 AM**, THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO
EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF
FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL
EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of
Deeds on April 4, 2007

Liber: _____ Folio: _____   Instrument No. 2007046303 _____

Maker(s) of Note secured by the instrument:
Lisa Koker
4754 6th Pl., NE, Washington, DC 20017 _____ (202) 529-7590 _____

Description of Property: _____ dwelling _____
                         (two-story brick, dwelling, apartment building, vacant lot, condominium unit, etc.)

Address: 4754 6th Pl., NE, Washington, DC 20017 _____

Lot & Square No. 71 / 3796 _____   or Parcel No: _____

Holder of the Note: Aurora Loan Services, LLC; (800) 776-9361
c/o James E. Clarke., Esq. P.O. Box 2548, Leesburg, VA 20175  703-777-2448

Balance owed on the note: $463,047.92 plus accrued attorney fees, costs, and other sums
which may accrue prior to sale.

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 "Right to Cure
a Residential Mortgage Foreclosure Default Act of 1984" $45,802.24 plus attorney fees and
costs and other sums which may accrue prior to sale.

Person to contact to stop foreclosure sale: James E. Clarke, Esq., P.O. Box 2548
Leesburg, VA 20175                                          703-777-2448
       (Address)                                         (Phone Number)
                          (over)

This Communication is from a Debt Collector and any information obtained may be used for that purpose.

EXHIBIT **b**                                                          5¹

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on August 20, 2010; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

August 20, 2010 _____ , agent
(Date)                    (Signature of the Noteholder or his agent)

I, Rita Abrams, a Notary Public in and for District of Columbia, DO HEREBY CERTIFY THAT J.S. Krieger, party/ies to this Notice of Foreclosure Sale bearing date on the 20th day of August, 2010 personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be his/her/their act and deed.

Given under my hand and seal this the 20th day of August, 2010.

_____
Notary Public

My commission expires 6/14/15

ROD form ADM/04
Revised   1/86

Rita Abrams
Notary Public, District of Columbia
My Commission Expires 6/14/2015

AFTER RECORDING RETURN TO:
James E. Clarke, Esq.
P.O. Box 2548
Leesburg, VA 20175
703-777-2448
Matter No. 501651

Alex Cooper Auctioneers, Inc.
Folio No. W-6346

Doc# 2010072256 Fees:$26.50
08/20/2010   1:33PM Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING
SURCHARGE              $      20.00
                       $       6.50

Doc# 2010075385

DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES is made this 18th day of August, 2010, effective August 4, 2010, by Mortgage Electronic Registration Systems, Inc. ( Beneficiary ).

WHEREAS, the Beneficiary is the holder of a Deed of Trust dated March 26, 2007, from Lisa Koker to certain trustees named therein, and recorded among the land records of the District of Columbia, on April 4, 2007, at Instrument # 2007046303 ( Deed of Trust ); and

WHEREAS, the Deed of Trust encumbers real property known as 4754 6th Place NE, Washington, DC 20017 and more fully described as:

**Lot numbered Seventy-One (71) in Square Three Thousand Seven Hundred Ninety-Six (3796) in a subdivision made by W. Penn Construction, Ltd., as per plat thereof duly recorded in the Office of the Surveyor for the District of Columbia in Liber 162 at folio 33. Known for the purposes of assessments and taxation Lot 0071, Square 3796.**

WHEREAS, the Deed of Trust grants to the beneficiary the unconditional power to appoint substitute trustees in place and stead of the original trustees named in the Deed of Trust and who desires to exercise the power to appoint substitute trustees in place and in stead of the Trustees and to vest the substitute trustees with same rights, powers, title and estate as are vested in the Trustees.

NOW, THEREFORE, in consideration of the sum of Five Dollars and 00/100 ($5.00), and other good and valuable consideration, the Beneficiary does hereby appoint James E. Clarke as Substitute Trustee, who may act either independently or jointly, under the Deed of Trust, with identically the same title and estate in and to the land, premises and property conveyed by the Deed of Trust, and with all rights, powers, trusts and duties of the Trustees.  James E. Clarke, whose offices are located at PO Box 2548, Leesburg, VA 20177, are attorneys duly licensed to practice law in the District of Columbia and are in good standing with the District of Columbia Bar.

EXHIBIT 7

IN WITNESS WHEREOF, the aforesaid owner and holder of the note hereby appoints, _Angela Martinez_ its _VP_, to execute and to acknowledge this deed as the act and deed of the party of the first part, which said attorney-in-fact, acting on behalf of said holder, has signed and sealed this deed on this _20_ day of _AUG_, 2010.

Mortgage Electronic Registration Systems, Inc.

By: _____
Name: 
Title: **Angela Martinez**
**Vice President**

STATE OF _VI_
COUNTY OF _Marion_

I hereby certify that on this _20_ day of _AUG_, 2010, before me, the subscriber, a Notary Public for the State and County aforesaid, personally appeared _Angela Martinez_ who acknowledged himself/herself to be the _VP_ of Mortgage Electronic Registration Systems, Inc., and that as such _Angela Martinez_ having been authorized to do so, executed the foregoing Deed of Appointment of Substitute Trustees for the purpose herein contained by signing, in my presence, his/her name as _VP_ of the Mortgage Electronic Registration Systems, Inc.. He/She is personally known to me and did not take an oath.

_____
Notary Public

My commission expires:

Return To:
Atlantic Law Group, LLC
PO Box 2548
Leesburg, VA 20177
501651
Lot 0071, Square 3786

501651

Page 2

```
Doc# 2010075385
Filed & Recorded
08/30/2010   16:03:26 PM
LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
   E-RECORD              $       20.00
   ESURCHARGE            $        6.50
Total:                   $       26.50
```

When recorded return to:
Atlantic Law Group, LLC
PO Box 2548
Leesburg, VA 20177

L501651DC

## TRUSTEES' DEED

THIS DEED, made this 21st day of September, 2010, between, James E. Clarke, Substitute Trustees ("Trustees"), and Aurora Loan Services, LLC 27472 Portola Parkway, Suite 205 #419 Foothill Ranch, CA 92610 ("Grantee") and

WHEREAS, Lisa Koker, by the Deed of Trust dated March 26, 2007, and recorded on April 4, 2007, as Instrument No. 2007048303, with the Recorder of Deeds for the District of Columbia ("Deed of Trust"), conveyed the hereinafter described property unto certain Trustee(s) in trust, to secure the payment of a certain debt therein set forth; and

WHEREAS, by a Deed of Appointment of Substitute Trustee, dated August 18, 2010 and recorded on August 30, 2010 as Instrument No. 2010075385, James E. Clarke were appointed as Substitute Trustees under the Deed of Trust; and

WHEREAS, default having occurred under the terms and provisions of the Deed of Trust, and the Trustees, by directions of the party secured filed notice on August 20, 2010 as Instrument No. 2010072256, in the Office of the Recorder of Deeds and a copy of said notice having been sent to the owner of the property described herein by regular and certified mail return receipt requested, in accordance with Public Law 90-566 and a copy of said notice having been sent to all lien holders of record of the property described herein, by regular and certified mail return receipt requested and, after previous advertisement of the sale for a period of (5) days in the Washington Times newspaper on September 10, 2010, September 13, 2010, September 15, 2010, September 17, 2010 and September 20, 2010, said property was sold for public auction on September 21, 2010 unto Aurora Loan Services, LLC, who as the highest bidder and best bidder therefore, became the purchaser thereof at and for the sum of ONE HUNDRED NINETY-THREE THOUSAND FIVE HUNDRED AND 00/100 ($193,500.00).

NOW, THEREFORE, WITNESSETH: that, for and in consideration of the sum recited above, receipt and sufficiency of which is hereby acknowledged, the Trustees do grant unto the Grantee, the following described land and premises situate in the District of Columbia and known and distinguished as:

**LOT NUMBERED SEVENTY-ONE (71) IN SQUARE THREE THOUSAND SEVEN HUNDRED NINETY-SIX (3796) IN A SUBDIVISION MADE BY W. PENN CONSTRUCTION, LTD., AS PER PLAT THEREOF DULY RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 162 AT FOLIO 33. KNOWN FOR THE PURPOSES OF ASSESSMENTS AND TAXATION LOT 0071, SQUARE 3796.**

Such property being located at 4754 6th Place NE, Washington, District of Columbia 20017

LOT 0071
SQUARE 3796

EXHIBIT 8

Trustees Deed
Page 2

TOGETHER WITH the improvements thereon and the appurtenances thereto and all the right, title, interest, and estate in the property.

SUBJECT TO covenants, easements and restrictions of record.

TO HAVE AND TO HOLD in fee simple.

WITNESS the hand and seals of the Trustees and Grantor(s).

SUBSTITUTE TRUSTEES:

_____ [SEAL]
JAMES E. CLARKE

COMMONWEALTH OF VIRGINIA      )
COUNTY OF LOUDOUN             )

I, JoAnn Aquilia Lassiter, a Notary Public in and for the State of Virginia, DO HEREBY CERTIFY THAT James E. Clarke, Substitute Trustee, parties to a certain Deed bearing the date of the 21st day of September, 2010, and hereto annexed personally appeared before me in said State of Virginia, THE SAID James E. Clarke being personally well known to me as the persons who executed the said Deed and acknowledged the same to be their act and deed as Substitute Trustee.

Given under my hand and seal this 27th day of _____ 2010.

_____
Notary Public

My Commission Expires:

JOANN AQUILLA LASSITER
REGISTRATION # 288624
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
FEBRUARY 29, 2012

501651

Receipt# 1862489

LARRY TODD
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
1101 4TH STREET SW
SUITE W 500
WASHINGTON, DC
20024-
(202) 727-5374

Doc# 2010094617   Pgs: 2
Doc Type: TRUSTEE DE

| | | |
|---|---|---|
| RECORDING | $ | 20.00 |
| SURCHARGE | $ | 6.50 |
| RECORDATION TAX FEE | $ | 2,128.50 |
| TRANSFER TAX FEE | $ | 2,128.50 |

| | | |
|---|---|---|
| Total | $ | 4,283.50 |
| Check Amt. Tendered | $ | 4,283.50 |
| Change Due | $ | 0.00 |
| Balance | $ | 0.00 |

| Check Number | | Amount |
|---|---|---|
| 013788 | $ | 2,128.50 |
| 013775 | $ | 2,128.50 |
| 013776 | $ | 26.50 |

Total Documents: 1
Total Fees: 4

Client Name GENERAL PUBLIC
10/26/2010 11:34:23 AM

Cashier: CARLAB