**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
LISA KOKER,                             )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Civil Action No. 12-1069 (RBW)
                                        )
AURORA LOAN SERVICING, LLC,             )
et al.,                                 )
                                        )
            Defendants.                 )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Lisa Koker brings this action against Aurora Loan Servicing, LLC ("Aurora"),

Mortgage Electronic Registrations Systems, Inc. ("MERS"), James E. Clarke, and Atlantic Law

Group, LLC ("Atlantic Law"), asserting claims for wrongful foreclosure and unlawful trade

practices in violation of District of Columbia and federal law.  <u>See</u> Verified Complaint for

Injunctive Relief, Damages, Declaratory and Other Equitable Relief and Civil Penalties

("Compl.") ¶¶ 9-93.  Currently before the Court are two motions to dismiss filed by Aurora and

MERS (the "Lender Defendants"), and Clarke and Atlantic Law (the "Trustee Defendants").

Upon careful consideration of the parties' submissions,[1] the Court concludes for the following

reasons that the defendants' motions must be granted.

---

[1] In addition to the filings already identified, the Court considered the following submissions and their supporting exhibits in rendering its decision: Aurora Loan Services LLC's and Mortgage Electronic Registration Systems, Inc.'s Memorandum of Law in Support of Motion to Dismiss Complaint ("Lender Defs.' Mem."); the Memorandum of Law in Support of Defendants James E. Clarke and Atlantic Law Group LLC's Motion to Dismiss Plaintiff's Complaint ("Trustee Defs.' Mem."); the plaintiff's Opposition to Aurora Loan Servicing, LLC's and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Complaint ("Pls.' Lender Defs. Opp'n"); the plaintiff's Opposition to Defendant James E. Clarke's and Defendant Atlantic Law Group LLC's Motion to Dismiss Complaint ("Pls.' Trustee Defs. Opp'n"); and Aurora's and MERS's Reply in Support of Motion to Dismiss Complaint ("Lender Defs.' Reply").

## I. BACKGROUND

The complaint contains the following allegations.  On November 9, 2006, the plaintiff purchased residential real estate located at 4754 6th Place, N.E., Washington, D.C. 20017 (the "Property").  Compl. ¶¶ 2, 7.  She "refinanced the Property on March 26, 2007, and the Deed of Trust . . . was recorded among the Land Records of the District of Columbia on April 4, 2007" (the "Deed of Trust").  Id. ¶ 8.  Although "[t]he lender referenced in the Deed of Trust was American Brokers Conduit," id., Aurora is now the "purported noteholder for the Property," id. ¶ 3.  MERS was "a corporation acting as the nominee of American Brokers Conduit and then . . . Aurora," and was also "the beneficiary of the Deed of Trust."  Id. ¶ 4.  Clarke "served as the Substitute Trustee" under the Deed of Trust, and is a member of Atlantic Law.  Id. ¶¶ 5-6.

In "June 2008, [the p]laintiff commenced communication with Aurora regarding a loan modification."  Id. ¶ 15.  She sought the loan modification because she was experiencing "financial hardship . . . due to the circumstances surrounding her divorce."  Id.  The plaintiff subsequently entered into three forbearance agreements with Aurora between June 2008 and February 2009.  See id. ¶¶ 15-17.  Although the plaintiff paid Aurora in accordance with the terms of her forbearance agreements, "Aurora initiated [f]oreclosure proceedings" as to the Property "on February 13, 2009, after Aurora had received the [plaintiff's] initial installment payment."  Id. ¶ 18.

"On August 17, 2009, [the p]laintiff filed a Chapter 13 Bankruptcy case" in the United States Bankruptcy Court for the District of Columbia "in an attempt to prevent foreclosure and save her home."  Id. ¶ 19.  The Bankruptcy Court confirmed "a Chapter 13 plan . . . on November 11, 2009," and entered a "Consent Order Modifying the Stay . . . on April 30, 2010."

Id.  "However, the stay was eventually lifted and Aurora proceeded with foreclosure and . . .
conducted a foreclosure sale [of] the Property on September 21, 2010."  Id.

Following the foreclosure sale, "Aurora initiated a Complaint for Possession of Real
Property in the Landlord Tenant Branch of the Superior Court of the District of Columbia
[("Superior Court")] on January 4, 2011."  Id.  "On February 1, 2011, [the p]laintiff filed a
Verified Answer Interposing Pleas of Title" in the Superior Court action.  Id.  The Superior
Court subsequently entered, with the parties' consent, a "protective order/undertaking" requiring
the plaintiff "to pay $1200.00 into the Court Registry each month."  Id.  "The case was then
certified to the Civil Division" of the Superior Court.  Id.  The plaintiff, however, failed "to make
certain protective order payments."  Id.  Consequently, the Superior Court sanctioned the
plaintiff by striking her plea of title defense on November 18, 2011, and transferred the case back
to the Landlord Tenant Branch.  Id.  The Superior Court then granted Aurora's motion for
summary judgment on March 6, 2012, and issued a Writ of Restitution on March 13, 2012.  Id.

The plaintiff instituted this action in the Superior Court on March 21, 2012.  Aurora then
removed the case to this Court on June 29, 2012.  The plaintiff's complaint asserts the following
thirteen counts:

- Count I (Violation of D.C. Code § 28-3904—Against Defendant Aurora)

- Count II (Violation of D.C. Code § 42-815—Against All Defendants)

- Count III (Violation of D.C. Code § 47-1431—Against MERS, James E. Clarke, and
  Atlantic Law)

- Count IV (Violation of D.C. Code § 28-3904—Against All Defendants)

- Count V (Breach of Contract—Against All Defendants)

- Count VI (Tortious Interference with a Contract—Against All Defendants)

- Count VII (Breach of the Duty of Good Faith and Fair Dealing—Against All Defendants)

- Count VIII (Breach of Fiduciary Duty—Against James E. Clarke and Atlantic Law)

- Count IX (Violation of 12 U.S.C. § 2605—Against Defendants Aurora and MERS)

- Count X (Declaratory Relief/Quiet Title—Against All Defendants)

- Count XI (Equitable Estoppel—Against All Defendants)

- Count XII (Unjust Enrichment—Against All Defendants)

- Count XIII (Injunctive Relief—Against All Defendants)

Id. ¶¶ 9-93.

The Lender Defendants and Trustee Defendants have now moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff receives the "benefit of all inferences that can be derived from the facts alleged."  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  But raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement.  Iqbal, 556 U.S. at 678.  Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  While the Court must

"assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

"'In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.'" Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citation omitted). And among the documents "subject to judicial notice on a motion to dismiss" are "public records," Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004), which includes records from other court proceedings, Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005).

A defendant may raise affirmative defenses, such as statutes of limitations and res judicata, in a Rule 12(b)(6) motion. See Smith-Haynie v. Dist. of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998) (statute of limitations); Stanton v. Dist. of Columbia Ct. of App., 127 F.3d 72, 76-77 (D.C. Cir. 1997) (res judicata); Jenson v. Huerta, 828 F. Supp. 2d 174, 179 (D.D.C. 2011) (res judicata). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Similarly, a court may grant a motion to dismiss based on res judicata only "'when the defense appears on the face of the complaint and any materials of which the court may take judicial notice.'" Jenson, 828 F. Supp. 2d at 179 (citation omitted).

### III.  ANALYSIS

**1.      Count I of the Complaint (Violation of D.C. Code § 28-3904 Against Aurora)**

Count I of the complaint alleges that Aurora violated the District of Columbia Consumer Protection Procedures Act ("D.C. Consumer Protection Act"), D.C. Code § 28-3904 (2001), by

offering her "unconscionable repayment terms" in three forbearance agreements between June 2008 and February 2009 that "wrongfully forced [her] into foreclosure." Compl. ¶¶ 15-18, 23. Aurora contends that this claim is time-barred. Lender Defs.' Mem. at 7-8. The Court agrees.

"A plaintiff must bring an action based on the Consumer Protection Procedures Act within three years 'from the time the right to maintain the action accrues.'" Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 323 (D.C. 2008) (quoting D.C. Code § 12-301). And "'[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs.'" Id. at 324 (citation omitted); see also News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C. 2005) ("[A] cause of action accrues when its elements are present, so that the plaintiff could maintain a successful suit."). Thus, in Murray, the District of Columbia Court of Appeals held that the claims of home mortgagors under the D.C. Consumer Protection Act relating to a foreclosure sale accrued when "the trustees instituted foreclosure proceedings," because that marked the point when the claim "could have been brought." 878 A.2d at 324. Such is the case here: Count I of the complaint alleges that Aurora offered the plaintiff "unconscionable repayment terms" in three forbearance agreements between June 2008 and February 2009 that ultimately caused her to be "wrongfully forced . . . into foreclosure." Compl. ¶¶ 15-18, 23. Because the plaintiff's purported injury is based on the foreclosure of the Property, see id. ¶¶ 23-24, her claim accrued, as in Murray, at the time Aurora initiated foreclosure proceedings on February 13, 2009, id. ¶ 18, because that is when the claim "could have been brought." The plaintiff filed this action on March 21, 2012, more than three years after her claim accrued on February 13, 2009. The claim is therefore conclusively time-barred as discerned from the face of the complaint. See Firestone, 76 F.3d at 1209.

The plaintiff resists this conclusion on several grounds, none of which are persuasive. First, the plaintiff contends that her claim is "not time barred because it is believed that [the] plaintiff was in contact with . . . Aurora through September 2010." Pls.' Lender Defs.' Opp'n at 6. But these allegations are nowhere to be found in the complaint, and "'[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" McManus v. Dist. of Columbia, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007) (citation omitted). In any event, even if the Court considered these new allegations, they would not save the plaintiff's claim from being time-barred. The new allegations merely assert that the plaintiff had some sort of "contact" with Aurora through September 2010; they do not claim that the plaintiff entered into another forbearance agreement with Aurora or that Aurora engaged in any actionable misconduct under the D.C. Consumer Protection Act during this time period.

Second, the plaintiff argues that Count I of the complaint is "not time barred based on the theory of equitable estoppel." Pls.' Lender Defs.' Opp'n at 6. "'Equitable estoppel . . . comes into play if the defendant takes active steps to prevent the plaintiff from suing in time.'" Gonzalez v. Internacional De Elevadores, S.A., 891 A.2d 227, 241 (D.C. 2006) (citation omitted); accord Chung v. DOJ, 333 F.3d 273, 278 (D.C. Cir. 2003) ("'Equitable estoppel' precludes a defendant, because of his own inequitable conduct—such as promising not to raise the statute of limitations defense—from invoking the statute of limitations."). Although a plaintiff need not plead equitable estoppel in the complaint because it is "an affirmative defense that [the] defendant must prove," the plaintiff must set forth sufficient allegations to justify the application of the equitable estoppel doctrine if a defendant does "raise[] the statute of limitations as a defense." Firestone, 76 F.3d at 1210 (emphasis added). The plaintiff has failed to do so here. Neither her complaint nor her opposition brief provide any details concerning how

Aurora purportedly tried to prevent the plaintiff from timely filing suit.  Rather, her equitable

estoppel theory is based on conclusory allegations devoid of factual content.  <u>See</u> Compl. ¶¶ 79-

82 (alleging that the "[d]efendants are [e]stopped from asserting the statute of limitations as an

affirmative defense against the [p]laintiff due to the [d]efendants own fraudulent concealment of

wrongdoing," and that the plaintiff "filed suit promptly upon discovering [the] essential facts that

give rise to the claims described herein, which the [d]efendants knowingly and willfully

concealed").  The plaintiff's theory is also undermined by other allegations in the complaint,

which indicate that the plaintiff had all the facts necessary to bring her D.C. Consumer

Protection Act claim when Aurora initiated foreclosure proceedings on February 13, 2009.

Indeed, by that date, the plaintiff knew that Aurora had offered her (and she had accepted) the

allegedly unconscionable repayment plans, and that Aurora was nonetheless foreclosing on the

Property.  <u>See</u> <u>id.</u> ¶¶ 20-24; <u>id.</u>, Exhibit ("Ex.") 5 (February 13, 2009 letter, delivered by certified

mail, notifying the plaintiff of Aurora's intent to foreclose on the Property).  Because there is no

specific allegation that Aurora engaged in conduct that prevented the plaintiff from timely

pursuing her claim under the D.C. Consumer Protection Act, the Court discerns no basis for

invoking the doctrine of equitable estoppel.

 Third, the plaintiff asserts that Count I of the complaint is not time-barred based on the

discovery rule.  Pl.'s Lender Defs. Opp'n at 6.  "'A claim usually accrues for statute of

limitations purposes when injury occurs, but in cases where the relationship between the fact of

injury and the alleged tortious conduct [is] obscure,'" District of Columbia courts "'determine[]

when the claim accrues through application of the discovery rule.'"  <u>Brin v. S.E.W. Investors</u>,

902 A.2d 784, 792 (D.C. 2006) (citation omitted).  The plaintiff simply assumes, without any

supporting analysis, that the discovery rule applies in this case.  <u>See</u> Pl.'s Lender Defs. Opp'n at

6-7.  That assumption is incorrect.  As in <u>Murray</u>, this is a case "'[w]here the fact of [the] injury can be readily determined,'" because the injury is based on Aurora's initiation of foreclosure proceedings.  953 A.2d at 324.  Consequently, the plaintiff's "'claim accrue[d] for purposes of the statute of limitations at the time the injury actually occur[ed],'" <u>id.</u>, and the discovery rule is not applicable to her claim under the D.C. Consumer Protection Act.

For all of these reasons, the Court will grant the Lender Defendants' motion to dismiss Count I of the complaint as time-barred.

**2.      Count II of the Complaint (Violation of D.C. Code § 42-815 Against All Defendants)**

Count II of the complaint asserts that all defendants violated various provisions of the District of Columbia's foreclosure statute, D.C. Code § 42-815 (2001), by issuing a defective notice of foreclosure sale and by failing to deliver the notice properly to the plaintiff.  <u>See</u> Compl. ¶¶ 26-36.

The Court notes initially that it is unclear what cause of action the plaintiff is intending to assert in Count II of the complaint.  Insofar as it is intended to assert an independent cause of action under § 42-815, the claim fails as a matter of law.  <u>See</u> <u>Young v. 1st Am. Fin. Servs.</u>, 992 F. Supp. 440, 445 (D.D.C. 1998) ("No court has ever recognized an independent cause of action under § 45-715(b) [now codified at § 42-815].  The appropriate avenue to assert a violation of this section is a claim of wrongful foreclosure, in which a party can attack a foreclosure—once it has been completed—as contrary to law.").  Insofar as Count II of the complaint asserts a common law claim for wrongful foreclosure against the defendants based on their purported violations of § 42-815, the Court will separately address the claim with respect to each defendant.  <u>See</u> <u>Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n</u>, 641 A.2d 495, 505 (D.C.

1994) ("[A]n action for wrongful or improper foreclosure may lie where the property owner

sustains damages by reason of a foreclosure executed in a manner contrary to law.").

### A.        Wrongful Foreclosure Claim Against Aurora

Aurora asserts that the plaintiff's wrongful foreclosure claim is barred by the claim

preclusion doctrine.  See Lender Defs.' Mem. at 19.  "'Under the doctrine of claim preclusion . .

. , a valid final judgment on the merits absolutely bars the same parties from relitigating the same

claim in a subsequent proceeding.'"  Parker v. Martin, 905 A.2d 756, 762 (D.C. 2006) (citation

omitted).[2]  "'A final judgment on the merits embodies all of a party's rights arising out of the

transaction involved, and a party will be foreclosed from later seeking relief on the basis of

issues which might have been raised in the prior action.'"  Id. (citation omitted).  In applying the

doctrine, District of Columbia courts "consider '(1) whether the claim was adjudicated finally in

the first action; (2) whether the present claim is the same as the claim which was raised or which

might have been raised in the prior proceeding; and (3) whether the party against whom the plea

is asserted was a party or in privity with a party in the prior case.'"  Elwell v. Elwell, 947 A.2d

1136, 1140 (D.C. 2008) (citation omitted).

Here, it is clear from the face of the complaint that all the requirements of claim

preclusion are satisfied.  First, it is undisputed that the ruling of the Superior Court's Landlord

Tenant Branch granting Aurora's motion for summary judgment and declaring Aurora in lawful

possession of the Property constitutes a final judgment on the merits.  See Compl. ¶ 19.  Second,

the plaintiff's wrongful foreclosure claim in this case could have been raised as a defense in the

---

[2] Pursuant to the Full Faith and Credit statute, 28 U.S.C. § 1738 (2006), the Court must apply the preclusion law of the District of Columbia because the judgment at issue was rendered by the Superior Court of the District of Columbia.  See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute . . . . This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.").

Superior Court action, as the claim challenges Aurora's ownership interest in the Property and thus its "authority to maintain the . . . Landlord Tenant action against [p]laintiff" in the Superior Court. Id. ¶ 31; see Henderson v. Snider Bros., Inc., 439 A.2d 481, 486 (D.C. 1981) (en banc) ("The grounds asserted in the complaint here could have been a good defense to the foreclosure. Having failed to raise the defense, [the plaintiffs] are now barred from raising it here as a separate cause of action.") (construing Maryland law); Threatt v. Winston, 907 A.2d 780, 782 n.3 (D.C. 2006) ("[T]he prior judgment established that [the defendant] was entitled to possession of the apartment, and, as a result, the court issued process authorizing the eviction. [The plaintiff] therefore cannot succeed in his claim of wrongful eviction without nullifying the initial judgment or impairing rights established in the initial action. So long as it remains undisturbed, the prior judgment precludes [the plaintiff's] new claim."). Third, Aurora and the plaintiff were parties both to this case and the Superior Court action.

The plaintiff argues that her wrongful foreclosure claim against Aurora is not barred because the Superior Court struck "her plea of title defense and jury demand . . . as a sanction for [her] fail[ure] to make certain protective order payments," and, consequently, "the claims arising from [her] plea of title defense were not adjudicated in the Landlord Tenant case." Pl.'s Lender Defs. Opp'n at 14-15. This argument misconstrues basic concepts of claim preclusion. Whether the plaintiff's wrongful foreclosure claim was actually adjudicated in the Superior Court action is immaterial; what matters is that the plaintiff could have raised the claim before the Superior Court. See Patton v. Klein, 746 A.2d 866, 870 (D.C. 1999) ("The [claim preclusion] doctrine operates to bar in the second action not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised."). The plaintiff concedes that she did raise her wrongful foreclosure allegations in the Superior Court, but that

the claim was stricken as a result of her failure to make agreed-upon payments.  In other words, she had a full and fair opportunity to litigate the claim but squandered that opportunity by failing to comply with her court-imposed obligations.  This Court is no position to second guess the Superior Court's imposition of sanctions on the plaintiff or its ruling granting summary judgment to Aurora.

      **B.**      **Wrongful Foreclosure Claim Against MERS and the Trustee Defendants**

With respect to MERS, Count II of the complaint alleges that "the Deed of Appointment of Substitute Trustee is defective because MERS did not have the authority as merely the 'nominee' to appoint the Substitute Trustee.  Only the noteholder has the authority to nominate the Substitute Trustee and, in this case, the noteholder did not appear as a party to the Deed of Appointment of Substitute Trustee."  Compl. ¶ 30.  As to the Trustee Defendants, the complaint alleges that "the Notice of Foreclosure was defective because . . . Clarke . . . did not have the authority to act as the Trustee at the time that the Notice of Foreclosure was recorded."  Id. ¶ 29.

The plaintiff does not explain how these allegations give rise to a common law claim of wrongful foreclosure against MERS or the Trustee Defendants.  See Pl.'s Lender Defs. Opp'n at 7-8; Pl.'s Trustee Defs. Opp'n at 5-6.  While she does assert that the defendants' conduct collectively violated the foreclosure statute, see Compl. ¶¶ 32-36, that statute only imposes obligations upon "the holder of the note . . . or its agent," D.C. Code § 42-815(b)-(c), which in this case is Aurora.  Furthermore, the complaint alleges that Aurora initiated the foreclosure proceedings, not MERS or the Trustee Defendants.  See Compl. ¶¶ 18, 31.  Based on these allegations, the Court finds that the complaint fails to state a plausible claim for wrongful foreclosure against MERS or the Trustee Defendants.

Accordingly, the Court will grant the defendants' motions to dismiss Count II of the complaint.

### 3.   Count III of the Complaint (Violation of D.C. Code § 47-1431 Against MERS, Clarke, and Atlantic Law)

Count III of the complaint alleges that MERS, Clarke, and Atlantic Law violated D.C. Code § 47-1431 (2001) by failing to properly assign the Deed of Trust to Aurora.[3]  Compl. ¶¶ 38-41.  Section 47-1431 provides in pertinent part that:

> Within 30 days after . . . an economic interest in real property is transferred . . . all transferees of, and all holders of the security interest in, real property shall record a fully acknowledged copy of the deed or other document, including the lot and square number of the real property transferred or encumbered, with the Recorder of Deeds of the District of Columbia.

D.C. Code § 47-1431(a).  "If a person fails to record the deed or other document, as required by § 47-1431, there shall be imposed on the person an additional penalty in the amount of $250." Id. § 47-1433(c).

The defendants argue that § 47-1431(a) does not create a private right of action and that the plaintiff's claim thus fails as a matter of law.  See Lender Defs.' Mem. at 9; Trustee Defs.' Mem. at 5.  Section 47-1431(a) does not expressly confer a private right of action; rather, violators of the statute face only a monetary fine.  See D.C. Code § 47-1433(c).  So "[i]f a private right of action for damages under [the statute] is to exist, . . . it must be judicially inferred, or as is commonly stated, implied."  Dorsey v. U.S. Dep't of Labor, 41 F.3d 1551, 1554 (D.C. Cir. 1994).  And "[t]he burden is on [the plaintiff] to demonstrate that, in spite of the absence of any explicit authorization, the D.C. Council intended to imply a right to sue for

---

[3] Despite the fact that Count III of the complaint only mentions MERS, Clarke, and Atlantic Law, the plaintiff's opposition brief argues that the claim is asserted against Aurora as well.  See Pl.'s Lender Defs. Opp'n at 8-9.  As previously noted, however, the plaintiff cannot amend her complaint by way of her opposition brief.  McManus, 530 F. Supp. 2d at 74 n.25.  Thus, the Court will consider Count III as being asserted only against MERS, Clarke, and Atlantic Law.

damages for violations of" § 47-1431(a).  Coates v. Elzie, 768 A.2d 997, 1001 (D.C. 2001)

(discussing the factors relevant to determining whether a District of Columbia statute gives rise

to an implied cause of action).  The plaintiff has failed to carry this burden.  Indeed, she provides

no analysis on the point and simply assumes that she may sue for a violation of the statute.

Because the plaintiff has not shown that § 47-1341(a) authorizes a private right of action, the

Court will grant the defendants' motions to dismiss Count III of the complaint.

4.      **Count IV of the Complaint (Violation of D.C. Code § 28-3904 Against All
        Defendants)**

        Count IV of the complaint alleges that all defendants violated an unspecified provision of

the D.C. Consumer Protection Act by "proceeding with a wrongful foreclosure sale with [an]

erroneous Notice of Foreclosure Sale that did not reflect the proper noteholder and did not

accurately state the amount owed on the note or the cure amount," and by Aurora's "filing [of] a

wrongful complaint for possession in the Superior Court."  Compl. ¶¶ 43-46.  This count is

duplicative of Count II and must be dismissed for the reasons discussed supra at 10-13.  Namely,

the claim is barred by the claim preclusion doctrine insofar as it challenges Aurora's actions

relating to the foreclosure on the Property because the plaintiff could have raised the claim in the

Superior Court action, and is precluded from doing so now as a result of the Superior Court's

final judgment on the merits.  And to the extent that the claim seeks to hold the non-Aurora

defendants liable for wrongful foreclosure, it fails to state a plausible claim to relief.  In addition,

the plaintiff fails to respond to the Lender Defendants' contention that a foreclosure is not a

"consumer transaction" to which the D.C. Consumer Protection Act applies, see Lender Defs.'

Mem. at 10-11; Pl.'s Opp'n to Lender Defs.' Mem. at 10, so the Court will deem this argument

conceded.  See Lewis v. Dist. of Columbia, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb.

2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff files an

opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" (quoting Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), aff'd, 98 F. App'x 8 (D.C. Cir. 2004))).  Accordingly, the Court will grant the defendants' motions to dismiss Count IV of the complaint.

**5.      Count V of the Complaint (Breach of Contract Against All Defendants)**

Count V of the complaint alleges that the defendants breached their contractual obligations to the plaintiff by "failing to properly assign the Note and Deed of Trust, failing to follow proper procedure in the foreclosure on the Property[,] and failing to properly transfer the [P]roperty to Aurora."  Compl. ¶¶ 48-51.

As to Aurora, this claim must be dismissed for several reasons.  First, the plaintiff does not respond to Aurora's arguments urging dismissal of the claim, see Lender Defs.' Mem. at 12; Pl.'s Lender Defs. Opp'n at 11, so the arguments will be deemed conceded.  See Lewis, 2011 WL 321711, at *1.  Second, even if the Court were to reach the merits of the claim, it does not state a plausible claim to relief because, as Aurora points out, see Lender Defs.' Mem. at 12, the plaintiff's allegations are contradictory and self-defeating.  The plaintiff's theory appears to be that Aurora breached its contractual obligations under the Note and Deed of Trust by, among other things, failing to ensure that the Note was assigned properly from American Brokers Conduit (the original lender) to Aurora.  But if, as the plaintiff alleges, Aurora was not the holder of the Note, then Aurora was not a party to the contract.  And Aurora could not have breached a contract to which it was not a party.  See Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009) ("To prevail on a claim of breach of contract, a party must establish," among other things, "a valid contract between the parties.").  Third, insofar as the breach of contract claim

challenges the manner in which Aurora foreclosed on the Property, it is barred by claim

preclusion for the reasons discussed <u>supra</u> at 10-13.

The plaintiff's breach of contract claim fares no better against MERS or the Trustee

Defendants.  The claim only alleges a contractual relationship between the plaintiff and Aurora.

<u>See</u> Compl. ¶¶ 50-51 (alleging that "[t]he contract between [the p]laintiff and Aurora was

breached" and that the plaintiff suffered damages "[a]s a result of the Aurora breaches of the

contract") (emphasis added).  Thus, it fails to state a plausible claim for breach of contract

against the non-Aurora defendants.  <u>See</u> <u>Tsintolas Realty</u>, 984 A.2d at 187.  The Court will

therefore grant the defendants' motions to dismiss Count V of the complaint.

**6.      Count VI of the Complaint (Tortious Interference with a Contract Against All Defendants)**

Count VI of the complaint alleges that all defendants tortiously interfered with "the

contract" by "wrongfully foreclosing on the Property."  Compl. ¶¶ 54-55.  This claim is

duplicative of the plaintiff's other wrongful foreclosure-based claims, and must be dismissed for

the reasons set forth <u>supra</u> at 10-13.

Count VI also alleges that the defendants tortiously interfered with "the contract" by

"interfering with the [p]laintiff's ability to perform under the Note."  <u>Id.</u> ¶ 55.  "To prevail on a

claim of tortious interference with [a] contract, a plaintiff must establish: '(1) the existence of a

contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of

the contract's breach, and (4) damages resulting from the breach.'"  <u>Murray</u>, 953 A.2d at 325

(citation omitted).  The complaint does not identify what "contract" Count VI is referencing, but

the Court will assume it is referring to the Note and Deed of Trust.  Proceeding under this

assumption, the complaint fails to state a plausible claim of tortious interference with a contract

against any defendant.  Specifically, the complaint provides no factual enhancement for the

conclusory allegation that the defendants intentionally procured the breach of the plaintiff's

contractual obligations, and thus fails to nudge the plaintiff's claim "'across the line from

conceivable to plausible.'"  Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570).  And

insofar as the claim alleges that Aurora breached its own contractual obligations by interfering

with the plaintiffs' contractual performance, it fails as a matter of law.  See Raskauskas v.

Temple Realty Co., 589 A.2d 17, 26 (D.C. 1991) (recognizing "the hornbook rule that 'the

defendant's breach of his own contract with the plaintiff is of course not a basis for the tort' of

interference with contractual relations," which "stems from the common sense notion that a

plaintiff should not be allowed to convert a breach of contract claim into a claim for tortious

interference" (internal citation omitted)).

       Accordingly, the Court will grant the defendants' motions to dismiss Count VI of the

complaint.

**7.      Count VII of the Complaint (Breach of the Duty of Good Faith and Fair Dealing Against All Defendants)**

       Count VII of the complaint alleges that all defendants breached "their duty of good faith

and fair dealing" by "destroy[ing] the [p]laintiff's ability to enjoy the benefits of the contract—

the quiet use and enjoyment of her home that [s]he had purchased."  Compl. ¶¶ 58-60.  In the

District of Columbia, "'all contracts contain an implied duty of good faith and fair dealing.'"

Murray, 953 A.2d at 321 (citation omitted).  Under this duty, "'neither party [to a contract] shall

do anything which will have the effect of destroying or injuring the right of the other party to

receive the fruits of the contract.'"  Id. (citation omitted).  Nor may a party to a contract

"'evade[] the spirit of the contract, willfully render[] imperfect performance, or interfere[] with

performance by the other party.'"  Id. (citation omitted).

Count VII fails to state a plausible claim to relief under this standard.  To begin with, the implied duty of good faith and fair dealing only applies in the context of a party's contractual performance, see id., yet Count VII fails to identify any contract as the predicate for the claim. Nor does Count VII provide any details concerning the conduct of the defendants that purportedly breached the implied duty of good faith and fair dealing, but instead refers to the "[d]efendants' actions" in vague terms.  See Compl. ¶¶ 58-60.  Because these legally deficient and conclusory allegations fail to state a plausible claim for breach of the implied duty of good faith and fair dealing, the Court will grant the defendants' motions to dismiss Count VII of the complaint.

**8.      Count VIII (Breach of Fiduciary Duty Against Clarke and Atlantic Law)**

Count VIII of the complaint alleges that the Trustee Defendants breached fiduciary duties to the plaintiff.  Compl. ¶¶ 63-64.  Regarding the fiduciary duties of trustees and substitute trustees, the District of Columbia Court of Appeals explained in Murray that

> a trustee under a deed of trust owes fiduciary duties both to the noteholder and to the borrower.  Substitute trustees under a deed of trust have, of course, a fiduciary relationship with both the lender and the borrower.  As a general proposition, trustees of deeds have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia. . . . [I]n the absence of fraud, misrepresentation, over-reaching, or self-dealing, trustees are not subject to any general fiduciary duties beyond those already required by law.

953 A.2d at 324-25 (internal citations, quotation marks, and alterations omitted).  Thus, for borrowers "to state a claim for breach of fiduciary duty upon which relief could be granted, it [is] necessary . . . [to] allege some action on the part of the . . . trustees that violated a duty conferred on the trustees by the trust instrument or the foreclosure statute," or to "allege that the . . . trustees committed fraud, misrepresentation, self-dealing, or over-reaching."  Id. at 325.

As an initial matter, the Trustee Defendants argue that the complaint presents no basis for holding Atlantic Law liable for breach of a fiduciary duty.  Trustee Defs.' Mem. at 7.  The plaintiff does not respond to this argument, see Pl.'s Trustee Defs. Opp'n at 10-11, so the Court will deem it conceded.  See Lewis, 2011 WL 321711, at *1.  However, even if the ruling was based on the merits of the argument, the Court would agree with the Trustee Defendants' position.  The complaint alleges that Clarke "purportedly served as the Substitute Trustee," Compl. ¶ 5, and that "[u]pon information and belief, . . . Clarke is a member of [Atlantic Law]," id. ¶ 6.  But it makes no specific allegations regarding Atlantic Law's conduct.  While Atlantic Law could conceivably be held liable for Clarke's actions based on an agency theory, no such theory is pleaded in the complaint and the Court cannot advance it on the plaintiff's behalf.  See Kiobel v. Royal Dutch Petro. Co., 621 F.3d 111, 195 (2d Cir. 2010) (a plaintiff must plead facts that plausibly support an inference that an agency relationship existed in order to survive a Rule 12(b)(6) motion); Acosta Orellana v. CropLife Int'l, 711 F. Supp. 2d 81, 111 n.36 (D.D.C. 2010) (same).  Thus, Count VIII must be dismissed as to Atlantic Law.

As to Clarke, the complaint alleges that he breached his fiduciary duties as substitute trustee by "proceed[ing] with the erroneous Notice of Foreclosure Sale that failed to state the noteholder," the accurate "amount owed on the note," and "the cure amount."  Compl. ¶ 63.  But Clarke had no such fiduciary duties.  Both the District of Columbia foreclosure statute and the Deed of Trust require the "holder of the note . . . or its agent" (i.e., the lender), not the trustee, to provide adequate notice of default and intent to foreclose.  See D.C. Code § 42-815(b), (c)(1)(A);[4] Compl., Ex. 1 (Deed of Trust) ¶ 22 (requiring the "Lender" to give notice to the

---

[4] These provisions read in their entirety:

(continued . . . )

Borrower of default and intent to foreclose "as prescribed by Applicable Law"); Evans v. Chase

Manhattan Mortg. Corp., No. 04-2185, 2007 WL 902306, at *6 (D.D.C. Mar. 23, 2007)

(construing Deed of Trust with identical language to the one at issue in this case and stating that

"the Deed of Trust makes clear that it is the responsibility of the lender, not the trustee, to notify

the borrower that default has occurred and foreclosure is imminent," and that that this "provision

is consistent with [District of Columbia] law, which requires that the requisite notice be provided

by 'the holder of the note . . . or its agent'" (internal citations omitted)).  Thus, the plaintiff's

allegations concerning the inadequate notice of foreclosure sale do not show that Clarke, as

substitute trustee, violated "a duty conferred . . . by the trust instrument or the foreclosure

statute."  Murray, 953 A.2d at 325.  On the contrary, "in the absence of fraud, misrepresentation,

over-reaching, or self-dealing," id., which are not alleged in Count VIII of the complaint, Clarke

---

(. . . continued)

    (b) In the case of a residential mortgage, as a condition of issuance of the notice to foreclose under subsection (c) of this section, a foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument, shall not take place <u>unless the holder of the note secured by the deed of trust, mortgage, or security instrument, or its agent</u>, shall:

    (1)(A) Give written notice of default on a residential mortgage, in such format and containing such information as the Mayor shall, by rule, prescribe, by certified mail, postage prepaid, return receipt requested, and by first-class mail, to the borrower and, if different from the borrower, to the person who holds record title, of the real property encumbered by the deed of trust, mortgage, or security instrument at his or her last known address; and

    (B) Send a copy of the notice required by subparagraph (A) of this paragraph to the Mayor; and

    (2) Obtain a mediation certificate in accordance with § 42-815.02.

    (c)(1)(A) A foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument, shall not take place <u>unless the holder of the note secured by the deed of trust, mortgage, or security instrument, or its agent</u>, gives written notice of the intention to foreclose, by certified mail, postage prepaid, return receipt requested, and by first-class mail, of the sale to the borrower and, if different from the borrower, to the person who holds the title of record, of the real property encumbered by the deed of trust, mortgage, or security instrument at his last known address.

D.C. Code § 42-815(b)-(c)(1)(A) (emphasis added).

had a fiduciary duty under the Deed of Trust to conduct the foreclosure sale upon Aurora's

invocation of the power of sale provision, see Compl., Ex. 1 (Deed of Trust) ¶ 22.

The complaint also alleges that Clarke breached a fiduciary duty to the plaintiff by

attempting "to convey title to Aurora with an erroneous Trustee's Deed that contained language

reflecting the improper appointment of [Clarke] as the Substitute Trustee and the improper

transfer of the Property to Aurora." Compl. ¶ 64.  But the complaint does not explain how this

alleged conduct violated the trust instrument or the foreclosure statute, nor does it allege fraud,

misrepresentation, over-reaching, or self-dealing.  See Murray, 953 A.2d at 325.  And insofar as

this claim is based on the plaintiff's assertion that "Clarke was not, in fact, the trustee with the

authority to facilitate the foreclosure sale," Pl.'s Trustee Defs. Opp'n at 10, it is self-defeating.

Indeed, if Clarke was not a substitute trustee under the Deed of Trust at the time of the

foreclosure sale, then he did not owe the plaintiff any fiduciary duties based on a trustee

relationship at that time.

Accordingly, the Court will grant the Trustee Defendants' motion to dismiss Count VIII

of the complaint.

**9.     Count IX of the Complaint (Violation of 12 U.S.C. § 2605 Against Aurora and MERS)**

Count IX of the complaint alleges that the Lender Defendants violated a provision of the

Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (2006), by failing "to

provide [the p]laintiff with notice of when the servicing of the loan was assigned, sold[,] or

transferred." Compl. ¶¶ 67-68.  The Lender Defendants move to dismiss this claim on several

grounds, including that the plaintiff has failed to allege (1) that either Aurora or MERS was a

covered "transferor or transferee servicer" within the meaning of the RESPA; (2) that "there was

any servicing transfer that would require any notice" under the RESPA; and (3) that she suffered

the type of damages necessary to sustain a claim under § 2605 of the RESPA.  Lender Defs.'

Mem. at 14-15.  The plaintiff fails to respond to any of these arguments in her opposition brief,

see Pl.'s Lender Defs. Opp'n at 12-13, so the Court will deem the arguments conceded.  See

Lewis, 2011 WL 321711, at *1.  Thus, the Lender Defendants' motion to dismiss Count IX of

the complaint will be granted.

**10.**     **Count X of the Complaint (Declaratory Relief/Quiet Title Against All Defendants)**

Count X of the complaint seeks a judgment declaring that "Aurora has no legal right to

enforce the Note and Deed of Trust" and voiding the foreclosure sale.  See Compl. ¶¶ 71-77.

This claim is barred under the claim preclusion doctrine by the Superior Court's ruling in the

Landlord Tenant Action finding Aurora in lawful possession of the Property.  See supra at 10-13.

Furthermore, the Lender Defendants raise several arguments urging dismissal of this claim to

which the plaintiff fails to respond.  See Lender Defs.' Mem. at 16-17 & n.1 (arguing that (1)

Count X fails to state a claim against Aurora because it does not "identify or join as a party the

entity that she claims was the actual holder of the note," and (2) the plaintiff has conceded in

documents attached to the complaint that "Aurora is entitled to enforce the [N]ote, and effectuate

the foreclosure"); Pl.'s Lender Defs. Opp'n at 13.  Again, the plaintiff fails to respond to the

arguments raised by the Trustee Defendants urging dismissal of the claim.  See Trustee Defs.'

Mem. at 12-13 (moving to dismiss Count X because "none of the allegations in . . . Count X

relate[] to [the Trustee Defendants]"); Pl.'s Trustee Defs. Opp'n at 11.  Accordingly, the Court

will deem these arguments conceded, see Lewis, 2011 WL 321711, at *1, and the defendants'

motions to dismiss Count X of the complaint will be granted.

**11.      Count XI of the Complaint (Equitable Estoppel Against All Defendants)**

Count XI of the complaint does not assert an independent claim for relief, but instead invokes the doctrine of equitable estoppel in a preemptive response to any statute of limitations defenses that may be raised by the defendants.  See Compl. ¶¶ 78-82.  Because the Court rejected the plaintiff's equitable estoppel argument in its consideration of Count I of the complaint, see supra at 7-8, which is the only count of the complaint the Court deems time-barred, Count XI of the complaint will be dismissed.

**12.      Count XII of the Complaint (Unjust Enrichment Against All Defendants)**

Count XII of the complaint asserts a claim for unjust enrichment against all defendants, alleging that they "have wrongfully benefitted by charging and receiving artificially inflated mortgage payments from [the p]laintiff," and that "[i]t would be inequitable for [the d]efendants to retain the profits, benefits, and other compensation obtained by them from their wrongful conduct."  Compl. ¶¶ 84-85.  The Lender Defendants move to dismiss this claim on the grounds that an unjust enrichment claim cannot be asserted where an express contract exists between the parties, and the plaintiff's own allegation acknowledge the existence of such a contract.  Lender Defs.' Mem. at 18.  The Trustee Defendants move to dismiss the claim because the complaint does not allege that the plaintiff made any payments to them.  Trustee Defs.' Mem. at 13.  The plaintiff yet again fails to respond to these arguments, see Pl.'s Lender Defs. Opp'n at 13-14; Pl.'s Trustee Defs. Opp'n at 11-12, so the Court will deem them conceded.  See Lewis, 2011 WL 321711, at *1.  Accordingly, the defendants' motions to dismiss Count XII of the complaint will be granted.

**13.**    **Count XIII of the Complaint (Injunctive Relief Against All Defendants)**

Count XIII of the complaint "seek[s] a permanent injunction against [the d]efendants to prevent [the d]efendants from evicting the [p]laintiff, taking possession of the Property," and "selling the Property to a third party."  Compl. ¶ 88.  Because this claim challenges Aurora's foreclosure on and ownership interest in the Property, it is barred under the claim preclusion doctrine as a result of the Superior Court's judgment finding Aurora in lawful possession of the Property.  See supra at 10-13.  Furthermore, the plaintiff has again failed to respond to the defendants' arguments urging dismissal of this claim, see Lender Defs.' Mem. at 19; Trustee Defs.' Mem. at 14; Pl.'s Lender Defs. Opp'n at 14; Pl.'s Trustee Defs. Opp'n at 12, which the Court will therefore deem conceded.  See Lewis, 2011 WL 321711, at *1.  Thus, the defendants' motions to dismiss Count XIII of the complaint will be granted.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss.

**SO ORDERED** this 3rd day of January, 2013.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.